IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

IN RE: UNITED STATES OF
AMERICA

## EMERGENCY PETITION FOR WRIT OF MANDAMUS AND EMERGENCY MOTION TO STAY PROCEEDINGS IN THE DISTRICT COURT

Eight days before trial, without any explanation, a district judge "excused" an Assistant United States Attorney from a pretrial conference in a criminal prosecution where she is co-lead counsel. He again summarily "excused" her from a second conference four days later and indicated that he will not allow her to participate in the jury trial scheduled to begin on January 22, 2019.

The AUSA's only prior contact with the district judge was prosecuting a case that he dismissed with prejudice after excoriating the AUSA for discovery mistakes that the district judge appeared to attribute to the fact that the AUSA was a woman. *See United States* v. *Swenson*, 894 F.3d 677, 681, 685 (5th Cir. 2018). In a highly-publicized decision,

this Court reversed the dismissal, finding that the AUSA's errors were "benign mistakes." *Id.* at 685. This Court further noted that the district judge's comments regarding women, made in the context of the dismissal, were "demeaning, inappropriate, and beneath the dignity of a federal judge," regardless of to whom they were directed. *Id.* at 686 n.3. On remand, this Court directed the Chief Judge of the Southern District of Texas to reassign the case to a different district judge. *Id.* at 685.

The United States respectfully requests that this Court enter an order staying the January 22 trial (and all further proceedings) in *United States* v. *Rodriguez* (4:17-CR-222-1), pending in the Southern District of Texas, until this Court resolves the instant Emergency Petition for a Writ of Mandamus. The United States asks that this Court issue the writ, directing the district judge to recuse himself pursuant to 28 U.S.C. § 455 and to rescind any order prohibiting the AUSA from participating fully in the matter.

## I. Background

### a. This Court reverses the district judge's dismissal of the indictment in *United States* v. *Swenson*.

In early 2017, the district judge dismissed, with prejudice, an indictment charging Simone Swenson with various fraud offenses.

*Swenson*, 894 F.3d at 679. He based the dismissal on the fact that the prosecution had "missed pretrial discovery deadlines, mistakenly withheld some relevant documents until the eve of trial, and committed other errors" that this Court characterized as "missteps," "mishaps," and "benign mistakes." *Id.* at 679, 685. In dismissing the indictment, the district judge "excoriated the prosecution for [its] mistake[s]: 'You're supposed to know what you're doing. You're supposed to be the one thinking of stuff.'" *Id.* at 681. He also "apparently attributed [the prosecutor's] mistake to her sex: 'It was [a] lot simpler when you guys wore dark suits, white shirts and navy ties.... We didn't let girls do it in the old days.'" *Id.*

This Court reversed and remanded. *Id.* at 686. This Court also explained that the district judge's comments about women—regardless of whether they were directed at the *Swenson* prosecutor personally, or at other women in the room—were "demeaning, inappropriate, and beneath the dignity of a federal judge." *Id.* at 686 n.3.

On remand, this Court directed the Chief Judge of the Southern District of Texas to assign the case to a different district judge. *Id.* at 686. In doing so, this Court cited authority describing the two tests used to

decide whether reassignment is warranted. *See id.* (citing *Latiolais* v. *Cravins*, 574 F. App'x 429, 436 (5th Cir. 2014)). The more stringent test considers "whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous." *Latiolais*, 574 F. App'x at 436. The first test also considers "whether reassignment is advisable to preserve the appearance of justice" and whether preserving that appearance would be disproportionately outweighed by waste and duplication if the case were reassigned. *Id.* "Under the second and more lenient test, an appellate court will mandate reassignment when the facts might reasonably cause an objective observer to question the original judge's impartiality." *Id.* at 436-37 (internal quotation omitted).

*Swenson* garnered substantial, nationwide media coverage. *See* Ex. A.[1] Some of those articles included statements from the district judge.

---

[1] Exhibit A includes copies of various media articles describing this Court's opinion in *Swenson*. Judicial notice of that media coverage is appropriate under Fed.R.Evid. 201(b). *See*, e.g., *Washington Post* v. *Robinson*, 935 F.2d 282, 291 (D.C.Cir.1991) (allowing judicial notice of the existence and contents of newspaper articles); *see also Heliotrope Gen., Inc.* v. *Ford Motor Co.,* 189 F.3d 971, 981 (9th Cir. 1999) (taking judicial notice that market was aware of information contained in various news articles in fraud-on-the-market case).

For example, the Houston Chronicle reported that the district judge said his remark about women's clothing was a side comment addressed to FBI agents in the courtroom and had nothing to do with the merits of the case. Ex. A at 2. The article quoted the district judge as saying, "As the transcription shows, after I addressed the prosecutor, I talked to an FBI agent about poorly dressed agents." *Id.* at 3. The district judge continued, "The prosecutor supplied a quotation to the [C]ourt of [A]ppeals *that had been cut to make it appear* that I was talking to her." *Id.* at 3 (emphasis added). He continued, "The remark derogated no one. It was about the exclusion of women historically. Then and now I do not approve of their exclusion. Incidentally the defense lawyer, government lawyers and FBI agent were all women." *Id.*

> **b. The district judge forbids the *Swenson* prosecutor from participating in the prosecution and trial of *United States* v. *Rodriguez*.**

Approximately six months after this Court issued its opinion in *Swenson*, the *Swenson* prosecutor appeared before the district judge for a pretrial conference in *United States* v. *Rodriguez*, 4:17-CR-222-1. Trial was scheduled to begin eight days later. *See* Ex. B at DE 32.[2] The docket

---

[2] Exhibit B is a copy of the docket sheet in *United States* v. *Rodriguez*, 4:17-CR-222-1. Numbers in citations to "DE ___" refer to specific numbered docket entries.

sheet in *Rodriguez* listed both the *Swenson* prosecutor and a Department of Justice attorney and "Lead Attorney[s]" in the case. *Id.* at p.2. In that role, the *Swenson* prosecutor had participated in *Rodriguez* from its initiation, including by signing the indictment and by filing the Government's responses to various defense motions. *Id.* at DE 1, 41.

After entering the courtroom for the conference, the district judge addressed the *Swenson* prosecutor by name, stating, "you are now excused." He offered no rationale or explanation and the *Swenson* prosecutor left the courtroom. The pretrial conference proceeded, with DOJ co-counsel representing the United States. *See* Ex. A at p.7.

Four days later, the *Swenson* prosecutor and her DOJ co-counsel attended a second pretrial conference before the district judge. The district judge again "excused" her from the proceeding and indicated that he would not allow her to participate in the case. Ex. C at 3.[3] When the *Swenson* prosecutor asked the district judge why he was excusing her and forbidding her to participate in the case, the district judge refused to provide a reason. *Id.*

---

[3] Exhibit C is the transcript of the January 18, 2019 pretrial conference.

The United States Attorney for the Southern District of Texas, who was in the gallery observing the pretrial conference, then asked to approach to speak with the district judge regarding his refusal to allow the *Swenson* prosecutor to participate in the case. *Id.* at 3-4. In a lengthy colloquy, the district judge indicated that he was displeased with this Court's opinion in *Swenson* and that he thought the opinion resulted from lies and misrepresentations of the record in the Government's appellate brief. *Id.*at 4-7. Consistent with the quote in the Houston Chronicle, above, the district judge asserted that comments that this Court had seen as demeaning and inappropriate were not in fact directed at the *Swenson* prosecutor, but rather at others in the room. *Id.* at 5; *see also Swenson*, 894 F.3d at 686 n.3. The district judge indicated that he believed that the United States Attorney's Office had knowingly presented those comments to this Court in a misleading manner, in order to give the impression that he had been speaking to the *Swenson* prosecutor when he had actually been addressing "a different person" and "was referring to historical facts about FBI agents' dress." *Id.* at 5-7.

The judge's comments regarding the Government's appellate brief in *Swenson* appear to relate primarily to a sentence in the Government's

reply brief stating, "[t]he court criticized the prosecutor's investigation and belittled her, stating, 'It was a lot simpler when you guys wore dark suits, white shirts and navy ties. . . . We didn't let girls do it in the old days.' (*See* ROA.406-15, 417)."[4] Ex. D at 9.[5] The transcript of the *Swenson* conference before the district judge reflects that the ellipsis in the quotation edits out the FBI agent in the room apologizing and the district judge responding, "No, not you. I'm talking about them," before making his comment about "girls." Ex. E at 8-9.[6]

In his discussion with the United States Attorney, the district judge asserted that he had conveyed to the U.S. Attorney's Office that he believed the Government's brief in *Swenson* was misleading. Ex. C at 5-7. He also indicated that he believed the office should have withdrawn

---

[4] The Government's opening brief included a similar statement—"The court then asked whether the AUSA had anything against Montgomery County, told her she was supposed to know what she was doing, and made other disparaging comments, such as '[i]t was a lot simpler when you guys wore dark suits, white shirts and navy ties. . . . We didn't let girls do it in the old days.' (ROA.411-13)."

[5] Exhibit D is a copy of the Government's reply brief in *Swenson*. Page number references are to the pagination reflected in the ECF header of the document.

[6] Exhibit E is the transcript of the *Swenson* conference before the district judge. Page number references are to the pagination reflected in the ECF header of the document. As reflected by the ROA page numbers at the bottom of each page, the Record on Appeal available to this Court during the *Swenson* appeal included the full transcript of the proceeding during which the district judge dismissed the indictment.

the brief in response to his claim and that he was displeased that it had not done so. *Id.* at 7. The United States Attorney asked to be excused and left the pretrial conference. *Id.*

The district judge then asked DOJ co-counsel whether he wanted a continuance to find someone else to try the *Rodriguez* case with him. *Id.* Although he initially responded "no," after speaking with undersigned counsel (who was observing the proceeding in the gallery), DOJ co-counsel advised the district judge that, upon further consideration and after conferring with the U.S. Attorney's Office, he requested a one-week continuance of the trial date, in order to allow the Office to consider potential appellate options.[7] *Id.* at 10-11.

Indicating that he believed DOJ co-counsel was not seeking a continuance on his own behalf, the district judge engaged in a lengthy colloquy with undersigned counsel regarding the requested continuance. *Id.* at 10-11. Throughout that discussion, the district judge continued to voice his displeasure with this Court's decision in *Swenson* and reiterated that he believed the United States Attorney's office had filed a false brief

---

[7] During the pretrial conference, defense counsel advised the district judge that he and his client did not object to the Government's request for a continuance. Ex. C at 16-17.

in *Swenson* and should have withdrawn it when he pointed out its alleged deficiencies. *Id.* at 11-15. The district judge also commented that his courtroom was "not a playpen for [A]ssistant United States [A]ttorneys." *Id.* at 12. He ultimately denied the continuance request stating that it "ha[d] nothing to do with the merits of the case" and "was not sought by trial counsel but by a collateral motive on the part of the United States [A]ttorney." *Id.* at 26; *see also* Ex. B at DE 52.

The United States subsequently filed the instant emergency petition and motion for stay in this Court. In the district court, it filed a recusal/disqualification motion, pursuant to 28 U.S.C. §§ 144 and 455, and a notice of appeal of the district court's order barring the *Swenson* prosecutor's appearance. Ex. B. at DE 53, 54.

## II. A writ of mandamus is necessary.

The common-law writ of mandamus is codified at 28 U.S.C. § 1651(a) and "is appropriate only when the trial court has exceeded its jurisdiction or has declined to exercise it, or when the trial court has so clearly and indisputably abused its discretion as to compel prompt intervention by the appellate court." *In re U.S.*, 397 F.3d 274, 282 (5th Cir. 2005) (internal quotation omitted). To obtain a writ of mandamus, a

petitioner must show that she has no other adequate means to attain the desired relief and has a right to the issuance of a writ that is clear and indisputable. *In re United States ex rel. Drummond*, 886 F.3d 448, 449–50 (5th Cir. 2018). Additionally, an issuing court must be satisfied that the writ is "appropriate under the circumstances." *Id.* at 450.

The mandamus prerequisites, "however demanding, are not insuperable." *In re U.S.*, 397 F.3d at 282. "Federal courts have issued the writ to restrain a lower court when its actions would threaten the separation of powers by embarrassing the executive arm of the Government." *Id.* at 283 (internal quotation omitted). "In fact, '[a]ccepted mandamus standards are broad enough to allow the court of appeals to prevent a lower court from interfering with a coequal branch's ability to discharge its constitutional responsibilities.'" *Id.* (quoting *Cheney* v. *United States District Court for the District of Columbia*, 542 U.S. 367, 382 (2004)).

### a. The United States has no adequate means other than mandamus to obtain relief.

Absent a writ of mandamus, the United States cannot obtain relief from the district judge presiding over *Rodriguez* under circumstances where—at minimum—"his impartiality might reasonably be

questioned," and where he refuses to allow a designated Government attorney to appear.[8] *See* 28 U.S.C. § 455. The Government cannot appeal those issues after a verdict in defendant's favor because the Double Jeopardy clause would bar a second trial. Indeed, in a persuasive opinion, the First Circuit has recognized that, "in a criminal case in which the government seeks the judge's recusal . . . a defendant's verdict will terminate the case, thereby rendering the usual remedy, end-of-case appeal, illusory." *In re U.S.*, 158 F.3d 26, 30 (1st Cir. 1998).

### b. The United States is clearly and indisputably entitled to the relief it seeks.

#### i. The executive branch has authority to designate particular prosecutors to cases.

Various statutes vest the Department of Justice with authority to conduct litigation on behalf of the United States through personnel of the

---

[8] The United States might, arguably, be able to seek direct appellate review of the district judge's order refusing to allow the *Swenson* prosecutor to participate in the *Rodriguez* trial. *Cf. Draganescu* v. *First National Bank of Hollywood*, 502 F.2d 550, 551 (5th Cir. 1974) (denial of a motion to disqualify class counsel is appealable under 28 U.S.C. § 1291). Indeed, it has filed a notice of appeal to preserve whatever right it might have in that regard. *See* Ex. B at DE 54. A district court's denial of a recusal motion—and thus presiding over a case with actual or apparent bias—however, is not an appealable interlocutory order. *See Nobby Lobby, Inc.* v. *City of Dallas*, 970 F.2d 82, 94 n.3 (5th Cir. 1992). Accordingly, because the United States seeks relief allowing it to prosecute the *Rodriguez* case with counsel of its choice and in a forum free from actual or apparent bias or prejudice, it can only obtain complete relief through a writ of mandamus.

Department's choosing. Those statutes provide that, "[e]xcept as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party, and shall direct all United States attorneys, assistant United States attorneys, and special attorneys . . .in the discharge of their respective duties." 28 U.S.C. § 519. Further, "[e]xcept as otherwise provided by law, each United States attorney, within his district, shall prosecute for all offenses against the United States." 28 U.S.C. § 547. Those statutes clearly and indisputably establish that the United States Attorney and the Department of Justice, rather than any particular district judge, have authority to determine who may prosecute a criminal case on behalf of the United States in district court.

Although the district court has some authority to limit who appears before it, that discretion is narrow. For example, in the context of determining whether counsel may appear pro hac vice, this Court has held that an attorney "may not be denied the privilege to appear except on a showing that . . . he has been guilty of unethical conduct of such a nature as to justify disbarment of a lawyer admitted generally to the bar of the court." *In re Evans*, 524 F.2d 1004, 1007 (5th Cir. 1975) (internal

quotation omitted). Applying that standard to the analogous circumstances here, there is no valid basis for the district judge to deny the *Swenson* prosecutor's appearance.

The district judge appears to have based his decision to bar the *Swenson* prosecutor from participating in *Rodriguez* on his belief that her conduct during *Swenson* was improper enough to warrant a drastic result. *See* Ex. C at 7, 13-15. This Court's opinion in *Swenson*, however, forecloses the conclusion that, during that case counsel was "guilty of unethical conduct of such a nature as to justify disbarment." *In re Evans*, 524 F.2d at 1007. Indeed, this Court explicitly held that the shortcomings with which the district judge now takes issue were "missteps," "mishaps," and "benign mistakes," and that there was "nothing to suggest that the prosecution intentionally withheld the documents [at issue] or acted in bad faith." *Swenson*, 894 F.3d at 685. In light of that fact, the United States is clearly entitled to relief from the district judge's decision stripping it of its authority to determine who will litigate on its behalf.

### ii. The United States is entitled to proceed before a judge free from actual or apparent bias.

Pursuant 28 U.S.C. § 455, a district judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be

questioned" and in any proceeding "[w]here he has a personal bias or prejudice concerning a party." That mandatory statute guarantees all parties a judge free from actual or apparent bias. With respect to apparent bias, "[t]he inquiry is whether a reasonable person would have a reasonable basis for questioning the judge's impartiality, not whether the judge is in fact impartial." *Matter of Johnson*, 921 F.2d 585, 587 (5th Cir. 1991). "This Court recognizes that it is essential to avoid even the appearance of impropriety because it is as important in developing the public confidence in our judicial system as avoiding the impropriety itself." *United States* v. *Anderson*, 160 F.3d 231, 234 (5th Cir. 1998). Accordingly, "if the question of whether § 455(a) requires disqualification is a close one the balance tips in favor of recusal." *Republic of Panama* v. *Am. Tobacco Co. Inc.*, 217 F.3d 343, 347 (5th Cir. 2000).

Where, *inter alia*, a judge takes counsel's actions as a "personal affront to his authority," this Court has recognized that a reasonable person would have a reasonable basis for questioning the judge's impartiality. *Johnson*, 921 F.2d at 587. Similarly, where a "trial judge's remarks . . . reflect[ed] a personal prejudice against [a party] for successfully appealing . . . on the basis of the judge's actions during the

prior trial," this Court recognized that "a reasonable man would be convinced that the trial judge's impartiality might be questioned." *United States* v. *Holland*, 655 F.2d 44, 47 (5th Cir. 1981). Finally, where a party's counsel testified against the judge in a prior disciplinary proceeding, this Court held that it was "clear that a reasonable person, when apprised of the relevant circumstances that surround th[e] case, would harbor doubts about [the judge's] impartiality." *Anderson*, 160 F.3d at 233.

Consistent with this authority, the United States is clearly and indisputably entitled to the district judge's disqualification based on his actual and apparent bias against the United States and the *Swenson* prosecutor. A reasonable observer seeing the district judge at the *Rodriguez* pretrial conferences would be convinced that his impartiality might be questioned—and reasonably so.

He abruptly dismissed the *Swenson* prosecutor from both pretrial conferences. He refused to give her any reason for doing so. During his interaction with the United States Attorney, the district judge accused the *Swenson* prosecutor of unethical behavior despite this Court's ruling to the contrary on appeal. He accused other personnel in the United States Attorney's Office of filing a brief containing lies in this Court. He

expressed his view that, by failing to withdraw the brief after the district judge pointed out the (purported) misleading statements, the United States Attorney had adopted those misrepresentations.

"It is difficult under these circumstances to argue that a reasonable person would not harbor any doubt about [the district judge's] impartiality." *Anderson*, 160 F.3d at 233–34. Particularly in light of the fact that, in close cases the balance tips toward recusal, the record abundantly shows that the United States is entitled to relief.

### c. Issuing the writ is appropriate here.

Because the writ of mandamus is "supervisory in nature," this Court considers it especially appropriate where its issuance will have significance "beyond the immediate case." *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 319 (5th Cir. 2008). Here, the district judge's conduct and statements indicate that he continues to hold a bias at least against the *Swenson* prosecutor and intends not to allow her to practice in cases before him. It also appears that he holds a bias against counsel involved in preparing the Government's appellate brief in that matter.

Because the United States Attorney's office prosecutes virtually all of the federal criminal cases in this district, the *Swenson* prosecutor will

likely be assigned to a prosecution in the district judge's courtroom in the future. Indeed, the United States Attorney's Office and Department of Justice must finish prosecuting the *Rodriguez* case now pending before the district judge. In light of those facts, and the strength of the district judge's opinion that he was wronged during the *Swenson* appeal, it is appropriate for this Court to issue the writ in order to provide guidance about how the district judge should proceed in the next case where the *Swenson* prosecutor appears before him in court.

## III.   Conclusion

The United States asks this Court to stay all proceedings in the United States District Court for the Southern District of Texas in *United States* v. *Rodriguez* (4:17-CR-222-1) pending resolution of the instant Emergency Petition for a Writ of Mandamus. The United States further asks that this Court issue a writ of mandamus directing the district judge to recuse himself from any further proceedings in *Rodriguez*, pursuant to 28 U.S.C. § 455, and to rescind any order prohibiting the *Swenson* prosecutor from fully participating in the *Rodriguez* case.

Respectfully submitted,

RYAN K. PATRICK
United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

/s/ Jason Smith
JASON B. SMITH
Assistant United States Attorney
United States Attorney's Office
Southern District of Texas
1000 Louisiana, Suite 2300
Houston, Texas 77002
(713) 567-9100

ATTORNEYS FOR APPELLEE

**CERTIFICATE OF SERVICE**

I, Assistant United States Attorney, Jason B. Smith hereby certify that on January 19, 2019, an electronic copy of the United States' Emergency Petition for Writ of Mandamus and Emergency Motion To Stay Proceedings in The District Court was filed via this Court's CM/ECF system and was served on [DESIGNATE] by [MEANS].

s/Jason Smith
Jason B. Smith
Assistant United States Attorney

# CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because it contains 4,181 words.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Century Schoolbook, 14-point font for text and 12-point font for footnotes.

3.  This document complies with the privacy redaction requirement of 5th Cir. R. 25.2.13 because it has been redacted of any personal data identifiers.

4.  This document complies with the electronic submission of 5th Cir. R. 25.2.1, because it is an exact copy of the paper document.

5.  This document has been scanned for viruses with the most recent version of McAfee Endpoint Security and is free of viruses.

*s/ Jason Smith*
Jason B. Smith
Assistant United States Attorney
Date: January 19, 2019