# Exhibit C

```
1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF TEXAS
2                         HOUSTON DIVISION

3    UNITED STATES OF AMERICA      *    CRIMINAL NO. H-17-222
                                   *
4    VERSUS                        *    Houston, Texas
                                   *    January 18, 2019
5    BRENDA RODRIGUEZ              *    3:30 p.m.

6

7                         PRETRIAL HEARING
                  BEFORE THE HONORABLE LYNN N. HUGHES
8                  UNITED STATES DISTRICT JUDGE

9

10   For the Government:

11           Mr. Ryan K. Patrick
             United States Attorney
12           Ms. Tina Ansari
             Mr. Jason Smith
13           Mr. Thomas Heyward Carter
             United States Attorney's Office
14           Southern District of Texas
             1000 Louisiana
15           Suite 2300
             Houston, Texas 77002
16

17           Mr. Scott P. Armstrong
             United States Department of Justice
18           1400 New York Ave NW
             Washington, DC 20005
19

20   For the Defendant:

21           Mr. Lance Craig Hamm
             Attorney at Law
22           1200 Rothwell Street
             Houston, Texas 77002
23

24   Proceedings recorded by mechanical stenography, produced by
     computer-aided transcription
25
```

1 | Appearances - Con't:

2

3

4 | Court Reporter:

5 |          Fred Warner
             Official Court Reporter
6 |          515 Rusk Avenue
             Houston, Texas 77002
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        THE COURT:  Ms. Ansari, you may be excused.

2        MS. ANSARI:  Before I leave, Your Honor, you excused

3    me on Monday and you're excusing me today.  Trial starts on

4    Tuesday.  Are you excusing me from this trial, and if so, I'd

5    like to know why, please.

6        THE COURT:  I'm excusing you from the trial.

7        MS. ANSARI:  Do you have a reason for this excusal?

8        THE COURT:  You may leave.

9        MS. ANSARI:  So you are not giving me a reason, Your

10   Honor?

11       THE COURT:  Pardon?

12       MS. ANSARI:  I'm assigned to this case by the U.S.

13   attorney's office, I am co-lead with Mr. Armstrong on this

14   case, and I would like to have a reason of why I am being

15   excused.

16       THE COURT:  I understand you would like that.  You

17   will be disappointed.

18       MS. ANSARI:  I'll be disappointed by your reason?

19       THE COURT:  No, because you are not going to have my

20   reasons.

21       MS. ANSARI:  All right.  Thank you, Your Honor.

22       MR. PATRICK:  Your Honor, may I approach, please?

23       THE COURT:  For what purpose?

24       MR. PATRICK:  A follow-up question on Ms. Ansari's

25   line of questioning, sir, on behalf of the U.S. attorney's

1   office.

2               THE COURT:  Sure.

3               MR. PATRICK:  Your Honor, for the record, I am Ryan

4   Patrick.  I'm the United States attorney for the Southern

5   District of Texas.

6               Your Honor, my question is simply this:  Is it

7   your intention to not allow Ms. Ansari to represent the

8   government in any case in your court or does this also extend

9   to any other female in my office?

10              THE COURT:  Mr. Patrick, have you polled the females

11  in your office?

12              MR. PATRICK:  No, sir.  I do not think that is

13  necessary on my part.  I assign them to the cases.  They want

14  to work the cases they're assigned to, sir.

15              THE COURT:  Are you familiar with Bert Isaacs?

16              MR. ARMSTRONG:  Not the name, no, sir.

17              THE COURT:  Is he still -- no, you're too --

18              MR. ARMSTRONG:  Am I am too young for this job?  Is

19  that what you were about to say, sir?

20              THE COURT:  Pardon?

21              MR. PATRICK:  Were you about to say I'm too young

22  for this job?  Is that what you were about to say, sir?

23              THE COURT:  Pretty soon you'll wish somebody would

24  say you were too young.  But your institutional knowledge

25  probably does not -- I don't know whether Mr. Isaacs works

1 there or not.  He shouldn't.

2           You were furnished information about her

3 behavior and chose not to do anything about it.

4           MR. PATRICK:  The case you are referring to, sir, I

5 believe the Fifth Circuit disagreed.

6           THE COURT:  Yes.  I don't know -- in fact, who was

7 the lawyer who signed the brief besides you?

8           MR. PATRICK:  I'm not aware, sir.

9           But my question --

10          THE COURT:  No.  I'm sorry.  The brief was a lie.

11 The formation of the injury the Court was claimed to have

12 done to Ms. Ansari was addressed to a different person and

13 was referring to historical facts about FBI agents' dress.

14 The quotations were taken over a nine-page spread and placed

15 together.

16          The only quotation in the Fifth Circuit opinion

17 that I said was, "you're the attorney in charge," and I think

18 I said, "after three years, you're supposed to know what the

19 evidence is."  That's all I addressed to her.

20          But your office -- and I actually believe the

21 brief was filed before you got there -- but I sent the

22 information to you when I learned of it because nobody sends

23 me a brief.  I sent the information about where the quotes

24 came from.  There is even a footnote that says in the Fifth

25 Circuit opinion.  Have you read it?

1          MR. PATRICK:  It's been a long time, but yes, sir, I
2     have.
3          THE COURT:  That says maybe they were talking to
4     some men.  But anyway, the Fifth Circuit opinion itself says
5     they didn't know to whom I was addressing the remarks.  But
6     it was presented as if she was the person and it was about
7     her sex when it wasn't.
8          MR. PATRICK:  So based on that logic, Your Honor,
9     does that mean you cannot trust anything that comes from my
10    office?  Are you asking that we recuse ourselves from
11    anything in your courtroom?
12              You just said that my brief writers lied to the
13    Fifth Circuit, which is a very serious allegation which I
14    take seriously.
15         THE COURT:  Not seriously enough to double check it
16    all and see that I was correct and withdraw the brief.
17         MR. PATRICK:  Sir, I read the transcript and I have
18    seen the opinion.  We may disagree on the facts, but now you
19    have leveled an allegation that my appellate section has lied
20    to the Fifth Circuit.
21         THE COURT:  Not the section.  There's a series of
22    names on that brief.
23         MR. PATRICK:  Yes, sir.
24         THE COURT:  Are you one of them?
25         MR. PATRICK:  Most certainly.  My name is on

1  everything filed in the Southern District of Texas.

2              THE COURT:  Well, but I don't know whether you had

3  the office when it was filed.

4              MR. PATRICK:  Anything that goes out is under my

5  name.

6              THE COURT:  Well, you ratified the dishonest brief

7  when you refused to withdraw it.

8                  And, Mr. Patrick, under other United States

9  attorneys, assistants have been vituperative, dishonest; and

10 when it's pointed out to them, they corrected the problem.

11                 I sent you the data and you didn't correct it.

12 So you have ratified what they did.

13                 Ms. Ansari is not welcome here because her

14 ability and integrity are inadequate.

15             MR. PATRICK:  All right.  May I be excused, sir?

16             THE COURT:  Yes.

17             MR. PATRICK:  Thank you, Your Honor.

18                 (Mr. Patrick leaves the courtroom)

19             THE COURT:  It took three of them to come deliver

20 that message.

21                 Do you want a continuance to have alternate

22 associate counsel?

23             MR. ARMSTRONG:  No, Your Honor.

24             THE COURT:  Thank you.

25                 Who is that?

1    MR. ARMSTRONG:  Your Honor, at counsel table with me
2  is our DOJ paralegal, Mr. Gaslin.
3    THE COURT:  You should have him sit next to you
4  because he knows more about the case than you do, and he's a
5  valuable resource.
6    MR. ARMSTRONG:  Your Honor, Mr. Carter also entered
7  his appearance on behalf of the U.S. attorney's office I
8  believe this week as well.
9    MR. CARTER:  May I approach, Your Honor?
10    THE COURT:  On behalf of the United States or the
11  U.S. attorney's office?  Who is the party here?
12    MR. ARMSTRONG:  The party is the United States.  He
13  entered his appearance in this case.
14    MR. CARTER:  May I approach, Your Honor?
15    THE COURT:  Certainly.
16    MR. CARTER:  Thank you, Your Honor.
17    THE COURT:  I always like to meet the paralegals
18  because that's where I get to meet the people who do all the
19  work.
20    MR. ARMSTRONG:  Certainly true, Your Honor.
21    MR. SMITH:  Your Honor, I apologize for being
22  another person standing up in the gallery.  Jason Smith.
23    THE COURT:  Wait a minute.  I can't hear you.
24    MR. SMITH:  I apologize for being another person
25  standing up in the gallery.  Jason Smith.  I am an assistant

1  U.S. attorney.

2           Can I speak to Mr. Armstrong for one second?  I

3  apologize.

4           THE COURT:  You have got to get in the microphone.

5           MR. SMITH:  I'm sorry, Judge.  Jason Smith for the

6  United States.  I am not entering an appearance here, but I

7  am an assistant U.S. attorney.

8           Could I just have a moment to speak with Mr.

9  Armstrong?

10          THE COURT:  Yes.  But you're entering an appearance

11 when you talk to me about a case, so --

12          MR. SMITH:  Understood, Judge.

13          THE COURT:  Lawyers, all kind of lawyers, you know,

14 "I just want to say something, but I am not entering an

15 appearance."

16          But talk to him.

17          MR. SMITH:  Thank you, Judge.  I appreciate that.

18          THE COURT:  How about we take a five-minute recess,

19 10-minute?  I don't know what he is going to talk about.

20          MR. ARMSTRONG:  Nor do I, Judge.

21          THE COURT:  So I think maybe there is some help back

22 there in the back.  So let's take a 10-minute recess.  The

23 room is wired, so you might want to go out into the hall.

24          MR. SMITH:  Thank you, Your Honor.

25          MR. ARMSTRONG:  Thank you, Judge.

1          (Recess taken)

2          THE COURT:  Yes, sir.

3          MR. ARMSTRONG:  So, Your Honor, I have conferred

4   with the U.S. attorney's office, and they would like me to

5   request --

6          THE COURT:  Now wait a minute.  You're going to

7   confer with an office.

8          MR. ARMSTRONG:  I've conferred, and they would -- we

9   would respectfully request a one-week continuance.

10          THE COURT:  Why?

11          MR. ARMSTRONG:  So that potential appellate options

12   can potentially be pursued.

13          THE COURT:  If you're incapable, with the assistance

14   of that gentleman whose name I have forgotten, and the

15   support staff to handle this case, then why are you here?

16          MR. ARMSTRONG:  Your Honor, it's certainly not a

17   capability issue.  They would like me to make this request so

18   that appellate options could be pursued.

19          THE COURT:  So appellate options to do what?

20          MR. ARMSTRONG:  To potentially ask the Fifth Circuit

21   on whether Ms. Ansari's excusal was appropriate and if so --

22   or if not, what remedy would be appropriate.

23          THE COURT:  Maybe we should suggest that we recruit

24   a whole passel of lawyers from the District of Oklahoma or

25   some place.

1        MR. ARMSTRONG:  So, Your Honor, notwithstanding our
2  previous comments, we would respectfully request a one-week
3  continuance.
4        THE COURT:  What's his name?  Not you.  The guy who
5  didn't want to make an appearance so he could jump in the
6  middle of the case.
7        MR. SMITH:  Jason Smith, Your Honor.
8        THE COURT:  Steven Smith?
9        MR. SMITH:  Jason.
10       THE COURT:  Jason.
11           And what's your job title?
12       MR. SMITH:  I am an assistant U.S. attorney, Judge.
13       THE COURT:  Do they have you in some department?
14  They have departments.
15       MR. SMITH:  I'm in the Southern District of Texas,
16  assistant U.S. attorney.
17       THE COURT:  They've got Trial, they have Appellate,
18  they have Condemnations.
19       MR. ARMSTRONG:  I am appellate.
20       THE COURT:  And they have Press Relations.  Which
21  department are you in?
22       MR. SMITH:  I am in the Appellate section, Judge.
23       THE COURT:  You're in the Appellate section.
24       MR. SMITH:  May I approach so you can hear me?
25       THE COURT:  Confer with whom?

1          MR. SMITH:  So it's easier to hear me.

2          THE COURT:  Yes, of course.  I couldn't hear you say

3     you couldn't hear me.

4               You've asked trial counsel to make a request

5     which it didn't occur to him to make.  So since you've

6     appeared for the Appellate section, would you kindly give me

7     a reason that this case should be continued.

8          MR. SMITH:  I think what's happened here is an

9     extraordinary and unusual circumstance, and the office needs

10    to talk internally and to the appropriate Department of

11    Justice folks to determine how to proceed.

12         THE COURT:  Really?

13         MR. SMITH:  Yes, Your Honor.

14         THE COURT:  Over the course of 33 years I've had the

15    occasion to point out false appellate briefs and an assistant

16    who in the course of proceedings attacked the case manager

17    for errors that were documented to be manifestly his, and he

18    was asked not to come back.

19              What goes on here is not a playpen for

20    assistant United States attorneys.  We do serious business

21    here for America.  And neither Johnny Holmes nor -- I am

22    drawing a blank on the other guy -- had any problem with a

23    minor adjustment in personnel.  In one case the brief was

24    withdrawn when its content was pointed out to the U.S.

25    attorney.

 1              It's not about the personnel here.  Are those
 2   lawyers not capable?
 3              MR. SMITH:  Your Honor, the office is requesting the
 4   extension to try --
 5              THE COURT:  Are you just going to --
 6              MR. SMITH:  It's not a fair question to ask me if
 7   those lawyers are capable.
 8              THE COURT:  It's not a fair question to ask me to
 9   continue a trial that we've spent a good deal of work getting
10   ready, including calling a jury for Tuesday, to postpone it
11   for a week so you can do whatever self-centered machination
12   the U.S. attorney's office wants to do.
13              If defense counsel are manifestly deficient,
14   that would be building an error into the proceedings, right?
15              MR. SMITH:  Defendants are entitled to effective
16   assistance of counsel, Judge.
17              THE COURT:  Well, America is entitled to it since we
18   pay for it, and it's our interest in the --
19              MR. SMITH:  Agreed.  And we clearly have a
20   difference of opinion on Ms. Ansari's capability and
21   qualifications.
22              THE COURT:  And I have had your acquaintance here
23   for 20 minutes or so, and I think I know more about her
24   capabilities than you do because they're manifest, they're in
25   the record.

1          Do you think it's capable to show up, not on
2  the eve of trial, on the morning of trial and have not
3  disclosed one of the complaining witness's files to the
4  defendant in the presence of orders to disclose all the
5  evidence and had three years to do it?

6          MR. SMITH:  It sounds to me like you are describing
7  the Simone Swenson case, which I think the Fifth Circuit
8  passed on both in terms of how Ms. Ansari performed and what
9  the Court's remedy was for that.  And they, too, had a
10  disagreement with you, Judge.

11          THE COURT:  Did you read it?

12          MR. SMITH:  Swenson?  Yes.

13          THE COURT:  Not having the full record, not having
14  the responsibility for the management of the trial, nowhere
15  in there did the Court of Appeals say three years was a
16  reasonable time to prepare a trial, the evidence for which
17  lay in the hands of six or seven or eight families who had
18  extensive records of everything they had done with the
19  defendant, did they?

20          No, they dodged that.  They went through a law
21  review article about how to do the least that you can in the
22  government in providing evidence.  Then there was an aside
23  raised about a misrepresentation of the quotations and a
24  misrepresentation of their purpose; and they were put
25  together in a strikingly unusual fashion, two moderately long

1  quotations about other people.

2         Two other people were stuck right under an

3  absolutely fair criticism, implied criticism where I said

4  "you're in charge, and it's been three years, you're supposed

5  to know."

6         And that's not harsh, it's not mean, it's not

7  personal, it's a simple fact.  And it wasn't just Ansari who

8  had three years, it was a team that had three years.

9         MR. SMITH:  In light of those views from the Court

10  and the actions the Court has taken with respect to Ms.

11  Ansari, the office would like a little time to consider how

12  to move forward, Judge.

13         THE COURT:  No.  You'd like a little time...

14         You were here for your boss's presentation,

15  weren't you?

16         MR. SMITH:  I've been in the gallery through this

17  whole proceeding, Judge.

18         THE COURT:  Pardon?

19         MR. SMITH:  I've been in the gallery through this

20  whole proceeding today.

21         THE COURT:  Did you hear him?

22         MR. SMITH:  Yes.  I heard the U.S. attorney.

23         THE COURT:  "Does it apply to all the women in my

24  office?"

25         Mr. Hamm, would you approach the lectern,

1  please.

2          MR. HAMM:  If the Court pleases.  Your Honor --

3          THE COURT:  Use the microphone.  Don't just decorate

4  it by standing behind it.

5          MR. HAMM:  Yes, sir.

6              I have spoken with Ms. Rodriguez and asked her

7  if she was opposed to a week's continuance or whatever the

8  Court felt in your wisdom that the government needed, and she

9  informed me that she was not.  Outside of what is going on

10 with the government's position --

11         THE COURT:  Has nothing to do with this trial.

12             And as you all both know, I have written the

13 charge already.  Before I have seen the jury, the charge is

14 written.  This was the backup in case something was undone.

15             I see no reason to delay it.  We have got a

16 jury summoned for Tuesday.  I understand that you'd like to

17 be cooperative with what I think, but I think she needs to

18 get out of limbo.

19         MR. HAMM:  If I may, Your Honor.

20         THE COURT:  How long has this case been pending?

21         MR. ARMSTRONG:  Since April of 2017, Your Honor.

22         MR. HAMM:  And, Judge, she wasn't, Ms. Rodriguez was

23 not saying that she was unopposed to a continuance so that

24 the government can get their business straight.

25         THE COURT:  No.  I understand.

1    MR. HAMM:  Okay.

2    THE COURT:  Did you tell me you have moved here

3    permanently?

4    MR. ARMSTRONG:  No, Your Honor.

5    THE COURT:  You are still coming from Washington?

6    MR. ARMSTRONG:  Yes, Your Honor.

7    THE COURT:  That's peculiar.

8    Just out of curiosity, are they shorthanded

9    here?

10   MR. ARMSTRONG:  The U.S. attorney's office?  So we

11   see ourselves as a complementary force.  Healthcare fraud is

12   obviously a massive problem; and so we have asserted

13   resources to hotbeds around the country, Houston being one of

14   them.

15   THE COURT:  You know, some of the resources ought to

16   be spent on prevention.

17   MR. ARMSTRONG:  Agreed, Your Honor.

18   THE COURT:  A conviction is actually a confession of

19   societal failure because if we were really efficient we'd

20   prevent it.

21   MR. ARMSTRONG:  Agreed, Your Honor.

22   THE COURT:  It hadn't gotten anywhere near that

23   anywhere.  Maybe Denmark.

24   Let me think about that.  We will go ahead and

25   finish the charge.

1                    Mr. Armstrong.

2              MR. ARMSTRONG:  Yes, Your Honor.

3              THE COURT:  I have a question about paragraph 23 on

4    my preliminary instructions.  Do we need it?

5              MR. ARMSTRONG:  So, Your Honor, I think you will be

6    happy to hear that based on our last pretrial conference we

7    took your words to heart and boiled of all our exhibits down

8    to a three-inch binder.

9              THE COURT:  Ah.  This is a leftover from a

10   four-doctor, multi-clinic problem.

11             MR. ARMSTRONG:  So the only piece of electronic

12   evidence that we have is just the claims data itself.  It's

13   one CD.  Everything else fits in this binder.

14             THE COURT:  So they will each have their own

15   notebook.

16             MR. ARMSTRONG:  Yes, Your Honor.

17             THE COURT:  If it occurs during the trial that

18   something else, one that you didn't put in there, becomes

19   necessary -- and remind me to put the thing that the fact

20   that it wasn't in the binder doesn't mean it wasn't

21   important and --

22             MR. ARMSTRONG:  Yes, Your Honor.

23             THE COURT:  -- shouldn't be considered.  I don't

24   know whether it's important or not, like the last sentence

25   says.

1           MR. ARMSTRONG:  I don't anticipate that coming up
2   unless Mr. Hamm has a few exhibits of his own, but I think I
3   can stand here today and say that our exhibits are in the
4   binder.
5           THE COURT:  Thank you.
6               We are getting copies of the General and
7   Specials.  I'm sorry.  I thought you got them originally.
8               Mr. Hamm, do you have any problem with the
9   preliminary instructions?
10          MR. HAMM:  No, Your Honor, not with the preliminary,
11  I do not.
12          THE COURT:  Do you recall who the appellate lawyer
13  who wrote the brief was?
14          MR. SMITH:  I don't know, Your Honor.
15          CASE MANAGER:  It's not in the docket sheet either.
16  I looked.
17          MR. SMITH:  I do know it wasn't me, but I don't know
18  who it was in the section.
19          THE COURT:  Okay.  I thought you'd know that.
20          MR. SMITH:  Yes.
21          THE COURT:  The last paragraph of Section 21 of the
22  General about minimizing evidence, that was in the last
23  trial, but that's not in this one, is it?
24          MR. ARMSTRONG:  I'm sorry, Your Honor.  I was trying
25  to follow along.  You said paragraph 21?

1       THE COURT:  Go to 22 and then read the paragraph
2   ahead of it.
3       MR. ARMSTRONG:  No, Your Honor.  We are not arguing
4   for the loss.
5       THE COURT:  I mean, I hadn't heard anything about
6   it.
7           And then 29 is another reference to the binder.
8       MR. HAMM:  Your Honor, I believe on paragraph 16 of
9   the general instructions, I believe that a name needs to be
10  added.  I can't --
11      MR. ARMSTRONG:  Your Honor, there are two
12  individuals who have pled guilty in this case who we believe
13  are co-conspirators.  One is Nina Iro, which you mentioned.
14  The other is Magealene, M-a-g-e-a-l-e-n-e, Akharamen,
15  A-k-h-a-r-a-m-e-n.
16          And we do not plan at this point to introduce
17  evidence of the guilty verdict of John Ramirez.
18      THE COURT:  Of which, on the General?
19      MR. ARMSTRONG:  Yes.
20      THE COURT:  All right.  So no talking about guilty
21  pleas or guilty verdicts.
22      MR. ARMSTRONG:  Yes, Your Honor.
23          So the two individuals pled guilty, Ms. Iro and
24  Ms. Akharamen; and we are not going to mention, at least at
25  this point, any verdict as to Dr. Ramirez.

1    THE COURT:  Now, Mr. Hamm, they can't mention it
2  unless you bring it up.

3    MR. HAMM:  Yes, sir.

4    THE COURT:  Don't blurt out anything because he'll
5  jump through the hole.

6    MR. HAMM:  Yes, sir.

7    THE COURT:  There is no, has been no indication
8  there will be character evidence.  That's paragraph 17 on the
9  4 of the Special.  They won't get these until the close.
10  They will only get the preliminary as soon as they're
11  impaneled, and then they get the General and the Specials
12  when the evidence has been closed and then you all argue
13  for six or seven minutes.

14    I think you've suggested a different material
15  fact or did you just not see it in paragraph 15?

16    MR. ARMSTRONG:  In paragraph 15 of which set of
17  instructions, Your Honor?

18    THE COURT:  Of Special.

19    MR. ARMSTRONG:  That is certainly good by us, Your
20  Honor.

21    Your Honor, I don't know what order you want to
22  go in, but one thing that I did not see -- I may have missed
23  it -- was the aiding and abetting instruction.  And we had
24  offered that as Proposed Instruction No. 17.

25    THE COURT:  Okay.  Paragraph 5 on the Specials?

1        MR. ARMSTRONG:  So I agree that's a good
2   approximation of the law as to conspiracy.  The aiding and
3   abetting point would be as to Counts 2, 3 and 4 for the
4   substantive healthcare fraud counts.

5        THE COURT:  It's the same instruction.  You aid and
6   abet when you help somebody do something and you intend to
7   help them do something.

8        MR. ARMSTRONG:  Agreed, Your Honor.  But I just
9   don't want the jury to be confused because this just reads,
10  "you may find her guilty of the conspiracy."  That leaves
11  open the question of whether she could be found guilty of the
12  substantive counts on that same theory.

13       THE COURT:  Actually 5 is general, and then you have
14  two conspiracies.  We had it in there twice.

15            So I think 6 and 7 cover that about the
16  conspiracy.

17       MR. ARMSTRONG:  We agreed as to conspiracy, Your
18  Honor, as the way they're titled as well.  So paragraphs 3,
19  4, 5, 6, 7, 8 of the Special Instructions apply as to Count
20  1.  And the issue that I am raising is to Counts 2, 3 and 4.

21       THE COURT:  But 5 applies to both, doesn't it?
22  Unless I missed the word "conspiracy" in there, it just talks
23  about responsibility for helping people.

24       MR. ARMSTRONG:  Your Honor, the last sentence of
25  Instruction 5 of the Special reads, "if the defendant

1  understands the unlawful nature of the plan and intentionally
2  joins that plan in one part, you may find her guilty of
3  conspiracy."
4          It doesn't say "or a scheme to defraud as
5  charged in Counts 2, 3 and 4."  And that's what we would
6  request, just to make it clear that that same theory applies
7  to both conspiracy and to Counts 2, 3 and 4.
8          THE COURT:  My 5 says criminally responsible as if
9  she'd acted alone.
10          Look at 14.
11          MR. ARMSTRONG:  I see it now.  That's signed by us,
12  Your Honor.  Thank you.  Sorry for the confusion.
13          THE COURT:  So the fuzzier one next to the
14  conspiracy.  But it would be hard to have a joint effort
15  without a conspiracy, wouldn't it?
16          MR. ARMSTRONG:  Certainly.
17          THE COURT:  Any other problems?
18          MR. ARMSTRONG:  Could I have some time to look it
19  over a little bit more with a fine tooth comb?  It looks fine
20  on the first glance, but I want to make sure that's not
21  missing anything else.
22          THE COURT:  All right.  The General, those are the
23  ones, I read them before the opening.
24          MR. ARMSTRONG:  No issues with the General.
25          THE COURT:  And so, I want to have -- I have never

1    had a case that was tried the way it was described at the

2    beginning, because I would like to get them the whole set;

3    but I am just not confident that there won't be a surprise.

4            MR. ARMSTRONG:  Your Honor, I doubt that we are

5    going to have an issue, but I would like to just have a quiet

6    moment of contemplation to consider.

7            THE COURT:  All right.  Anything else that we need

8    to get ready to do?

9            MR. ARMSTRONG:  I think Mr. Hamm and I have come to

10   agreement on most of the exhibits in the case, so it should

11   be a clean trial whenever it goes.

12           MR. HAMM:  Yes.

13           THE COURT:  All right.  So "most."  Are there any --

14   I also introduce those.  We do all that mechanical stuff

15   before the people are sitting there.

16           MR. HAMM:  Do you pre-admit the exhibits, Your

17   Honor?  Is that what you're saying?

18           THE COURT:  I'm going to admit them as soon as you

19   all agree on which ones are admissible, and rule on the

20   objections.

21           MR. HAMM:  Our understanding is there are exhibits

22   that need to be proved up through the individuals.  And the

23   government has assured me that they're going to call those

24   witnesses that go along with those.

25           THE COURT:  What we will do is we'll do a reverse.

1 If there are any of them you think need a foundation and he
2 doesn't do it, object --

3         MR. HAMM:  Yes, sir.

4         THE COURT:  -- at the time, or just remind him of
5 that, because juries get really bored.  So, "I hand you now
6 what's been marked as government's proposed Exhibit 4" and
7 all that.  They just want to know what they're supposed to
8 read, and they will read it.

9              So the stuff in the binder -- and we are going
10 to have 14.  Well, we'll need two for us and 14 for them.

11              Are you happy with one?

12         MR. HAMM:  I am happy with one, Your Honor.  At the
13 government's expense, I am happy with one.

14         THE COURT:  And it doesn't say anything inflammatory
15 on the cover, does it?

16         MR. ARMSTRONG:  Mr. Gaslin did a good job keeping it
17 pretty tight, Your Honor.

18         THE COURT:  Okay.  There have been some with
19 interesting covers.

20              All right.  Anything else?

21         MR. ARMSTRONG:  I would like to have a stipulation,
22 based on our last conversation, that Medicare is a healthcare
23 benefit program.

24         THE COURT:  Yes.

25         MR. ARMSTRONG:  In interstate commerce.

1          THE COURT:  He stipulates to that.

2          MR. HAMM:  Yes.

3          THE COURT:  Free enterprise doesn't want any

4    association with it.

5          MR. ARMSTRONG:  So, Your Honor, whenever trial is,

6    we expect a very short trial.  I think the case in chief will

7    be a day-and-a-half.

8          THE COURT:  Sounds right to me.

9               All right.  Let me take a five-minute break.

10                   (Recess taken)

11         THE COURT:  The United States' motion for

12   continuance is denied.  The trial will begin at 9:00 o'clock

13   Tuesday morning.

14              The motion for continuance has nothing to do

15   with the merits of the government's case against Ms.

16   Rodriguez, the availability of witnesses, the opportunity to

17   prepare and was not sought by trial counsel but by a

18   collateral motive on the part of the United States attorney.

19              Somebody famous said, "they defend their errors

20   as if they were defending their inheritances."

21         MR. ARMSTRONG:  Nothing further, Your Honor.

22         MR. HAMM:  No, Your Honor.

23         THE COURT:  All right.  We'll get together, we'll

24   formally admit first thing.  So be here -- you might come a

25   little early in case you thought of something to stir up

1  trouble.  Let's get together at 8:45 because it will be a

2  while by the time -- what time should the jury be here?

3          CASE MANAGER:  They're here early.  They can come up

4  early.

5          THE COURT:  It will be around 9:30 before we have a

6  group ready, willing and able to go.

7          MR. ARMSTRONG:  Certainly, Your Honor.  8:45 here

8  for us?

9          THE COURT:  Please.  Just so we have plenty of time.

10  And as soon as they are here we can get to work.

11          I'm sorry.  The voir dire.  Have you shortened

12  your witness list?

13          MR. ARMSTRONG:  Yes, Your Honor.  Everything is

14  shortened.

15          THE COURT:  Your suggestions were all about the

16  topic and the officers.

17          MR. ARMSTRONG:  I believe we had four topics, Your

18  Honor.  One was bout --

19          THE COURT:  FBI, medicare, home health, all that

20  stuff.

21          MR. ARMSTRONG:  There was one more, Your Honor.

22          THE COURT:  Healthcare fraud.

23          MR. ARMSTRONG:  That's it.

24          THE COURT:  Now, do you think I need to give them

25  their Miranda warnings before I ask them if they've had

1  experience with healthcare fraud?  Six people confess.  But,
2  no, I will cover that.
3            MR. ARMSTRONG:  Thank you, Judge.
4            THE COURT:  And I do it fairly informally and try to
5  warm them up, because while, of course, you are perfectly
6  composed.  For laymen who are not sure all what's going to
7  happen and what they're supposed to do, they're fairly
8  anxious; and you have got to loosen them up or they won't
9  answer the questions.
10           And so, if you all notice a member of the panel
11 who is, I don't know, starting to raise their hand or not
12 doing it or something, I don't want to embarrass them, but if
13 you'll just let the case manager or the clerk know what's the
14 number, I'll embarrass them, okay?
15           MR. ARMSTRONG:  Thank you, Judge.
16           THE COURT:  Anything else?
17           MR. HAMM:  No, sir.
18           THE COURT:  All right.  Thank you, counsel.
19
20
21                 (Conclusion of proceedings)
22
23
24
25

CERTIFICATION

I, Fred Warner, Official Court Reporter for the United States District Court for the Southern District of Texas, Houston Division, do hereby certify that the foregoing pages 1 through 28 are a true and correct transcript of the proceedings had in the above-styled and numbered cause before the Honorable LYNN N. HUGHES, United States District Judge, on the 18th day of January, 2019.

WITNESS MY OFFICIAL HAND at my office in Houston, Harris County, Texas on this the 19th day of January, A.D., 2019.

/s/ Fred Warner
Fred Warner, CSR
Official Court Reporter