# Exhibit D

No. 17-20131

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

UNITED STATES OF AMERICA,
                                        Plaintiff-Appellant,

v.

SIMONE SWENSON,
                                        Defendant-Appellee.

———————————————

On Appeal from the United States District Court
for the Southern District of Texas
Houston Division, Criminal No. 4:15-CR-402-1

———————————————

REPLY BRIEF FOR PLAINTIFF-APPELLANT

———————————————

ABE MARTINEZ
Acting United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

EILEEN K. WILSON
Assistant United States Attorney

United States Attorney's Office
1000 Louisiana, Suite 2300
Houston, Texas 77002
713.567.9102

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES .........................................................................ii

REPLY ARGUMENT ................................................................................ 1

    I.    OVERVIEW OF DISTRICT COURT PROCEEDINGS AND THE RELIEF SOUGHT. ......................................................................... 1

    II.   THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN DISMISSING THE INDICTMENT WITH PREJUDICE WHERE SWENSON FAILED TO PROVE A *BRADY* OR *GIGLIO* VIOLATION. ............................................................................. 5

    III.  THE DISTRICT COURT ABUSED ITS POWER BY DISMISSING THE INDICTMENT WITH PREJUDICE ........................................... 13

CONCLUSION ...................................................................................... 17

CERTIFICATE OF SERVICE ................................................................. 18

CERTIFICATE OF COMPLIANCE ........................................................ 19

# **TABLE OF AUTHORITIES**

**CASES**                                                                                   **PAGE(S)**

*Brady v. Maryland*, 373 U.S. 83 (1963) .................................................2, 5

*Cone v. Bell*, 556 U.S. 449 (2009) ...........................................................10

*Giglio v. United States*, 405 U.S. 150 (1972) .......................................2, 5

*Powell v. Quarterman*, 536 F.3d 325 (5th Cir. 2008)............................10

*Smith v. Cain*, 565 U.S. 73 (2012)............................................................9

*Turner v. United States*, 137 S. Ct. 1885 (2017) .....................................8

*United States v. Agurs*, 427 U.S. 97 (1976).............................................9

*United States v. Buck*, 847 F.3d 267 (5th Cir.),
      *cert. denied*, 138 S. Ct. 149 (2017)................................................14

*United States v. Chapman*, 524 F.3d 1073 (9th Cir. 2008) ..............15, 16

*United States v. Dvorin*, 817 F.3d 438 (5th Cir.),
      *cert. denied,* 137 S. Ct. 140 (2016)............................................7, 16

*United States v. Fulmer*, 722 F.2d 1192 (5th Cir. 1983) ........................14

*United States v. Garrett*, 238 F.3d 293 (5th Cir. 2000) ..........................13

*United States v. Jackson*, 254 F. App'x 434
      (5th Cir. 2007) (unpublished).........................................................9

*United States v. Madrid*, 676 F. App'x 309
      (5th Cir. 2017) (unpublished).......................................................12

*United States v. Manners*, 384 F. App'x 302
      (5th Cir. 2010) (unpublished).......................................................10

## **TABLE OF AUTHORITIES, cont'd**

**CASES**                                                    **PAGE(S)**

*United States v. McFadden*, 59 F.3d 1243 (5th Cir. 1995) .....................14

*United States v. McKinney*, 758 F.2d 1036 (5th Cir. 1985) ...................11

*United States v. Mitchell*, 538 F. App'x 369
    (5th Cir. 2013) (unpublished)..........................................................12

*United States v. Morrison*, 833 F.3d 491 (5th Cir. 2016),
    *cert. denied,* 137 S. Ct. 1098 (2017).................................................11

*United States v. Poole*, 735 F.3d 269 (5th Cir. 2013).............................16

*United States v. Rodriguez*, 630 F.3d 377 (5th Cir. 2011).......................9

*United States v. Rojas*, 812 F.3d 382 (5th Cir.),
    *cert. denied*, 136 S. Ct. 2420 (2016).................................................11

*United States v. Sipe*, 388 F.3d 471 (5th Cir. 2004) ................................7

*United States v. Stanford*, 823 F.3d 814 (5th Cir.),
    *cert. denied,* 137 S. Ct. 453 (2016)....................................................8

*United States v. Strouse*, 286 F.3d 767 (5th Cir. 2002) ..........................13

*United States v. Valas*, 822 F.3d 228 (5th Cir. 2016) ........................7, 11

*United States v. Walters*, 351 F.3d 159 (5th Cir. 2003)......................9, 10

## **RULES AND STATUTES**

18 U.S.C. § 1341 .......................................................................................2

18 U.S.C. § 1343 .......................................................................................2

Fed. R. Crim. P. 16(a)(1)(B)(i) ............................................................2, 5

## <u>TABLE OF AUTHORITIES, cont'd</u>

**<u>RULES AND STATUTES</u>**                                        **<u>PAGE(S)</u>**

5TH CIR. LOC. R. 47.5.4 ...............................................................9

No. 17-20131

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.

SIMONE SWENSON,
Defendant-Appellee.

On Appeal from the United States District Court
for the Southern District of Texas
Houston Division, Criminal No. 4:15-CR-402-1

BRIEF FOR PLAINTIFF-APPELLANT

Plaintiff-Appellant the United States of America ("Government")

files its reply brief in support of its appeal from the district court's

dismissal of the indictment with prejudice four days before trial.

## REPLY ARGUMENT

I.  OVERVIEW OF DISTRICT COURT PROCEEDINGS AND THE RELIEF
    SOUGHT.

Defendant-Appellee Simone Swenson ("Swenson") owned and

operated a private adoption agency that she fraudulently used to obtain money from prospective parents by matching them with the same birth mother.[1]   (*See* ROA.14-23).   On July 29, 2015, the Government charged Swenson with two counts of wire fraud under 18 U.S.C. § 1343 and two counts of mail fraud under 18 U.S.C. § 1341.   (ROA.14, 23-25). Swenson remained on bond throughout the proceedings.   (*See* ROA.39, 40, 70, *see also* ROA.8 - DE 59, 31, 32, 33).

After granting Swenson's four unopposed motions for continuance,[2] the district court scheduled trial for February 7, 2017.   (*See* ROA.43, 58, 71, 72, 73, 430, 435, 474).

On Friday, February 3, 2017, Swenson moved to dismiss the indictment with prejudice, claiming that the Government had failed to comply with *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), FED. R. CRIM. P. 16(a)(1)(B)(i), and the

---

[1] "ROA." refers to the appellate record stamped "17-20131" and is followed by the applicable page number(s).   "DE" represents the district court's docket sheet.

[2] Swenson filed motions: (1) on August 24, 2015, because she was "not prepared to proceed to trial," (2) on January 25, 2016, because she had new counsel who had not yet received the discovery and needed time to complete their own investigation and analysis, (3) on March 29, 2016, because her attorneys needed additional time to review the discovery and investigate the "document-intensive" case, and (4) on August 23, 2016, because "[t]he case is document intensive, and defense counsel is still waiting to receive additional documents requested from third-parties that are necessary to fully investigate the case and to prepare for trial."   (*See* ROA.43, 430, 435, 474-75).

district court's January 17, 2017 discovery deadline.    (ROA.200).
Swenson had obtained the police report that she had filed with the
Montgomery County Sheriff's Office in November 2013 accusing a birth
mother of fraud.    (ROA.200).    The report showed that the Sheriff's
Office had sent FBI Agent Brooks a copy of its case file on December 6,
2013, but Swenson's attorney, an Assistant Federal Public Defender
("AFPD"), had not received it from the Government.    (*See* ROA.201).

The AFPD notified the Assistant United States Attorney ("AUSA")
that Swenson had obtained the report.    (ROA.201).    "A short while
later, the government forwarded an email from the case agent showing
that the government had received" the report in December of 2013.
(ROA.201).    The prosecutor also sent the AFPD emails from the case
agent containing five other police reports with witness statements. [3]
(*See* ROA.201).

At a hearing on Monday, February 6, 2017, Judge Hughes
dismissed the indictment *with prejudice*, despite the AUSA's repeated
assurances that she had made a mistake by not sending the reports

---

[3] The Government had one other police report that was too large to email and would
bring it to the hearing on Monday, February 6, 2017.    (*See* ROA.411).

earlier. (ROA.407, 411). The court criticized the prosecutor's investigation and belittled her, stating, "It was a lot simpler when you guys wore dark suits, white shirts and navy ties. . . . We didn't let girls do it in the old days." (*See* ROA.406-15, 417). "You're supposed to know what you're doing." (ROA.412). The court even chastised the prosecutor for consulting with her co-counsel, saying "if you continue to look away and tend to other things while I am speaking to you, you will get to go outside and rest." (*See* ROA.412-13).

At the hearing and in his order on the same date, Judge Hughes found that the Government had not fully disclosed all information and that a fifth continuance would cause too much delay. (*See* ROA.232, 415-17). The district court also denied the Government's subsequent motion for reconsideration. (ROA.281).

This Court should reverse the district court's pre-trial order dismissing the indictment with prejudice. Swenson failed to establish the requisite prongs under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972).[4] Also, the Government's

---

[4] As the Government stated in its opening brief, neither the district court's order dismissing the indictment with prejudice nor its opinion on reconsideration expressly found that the Government violated *Brady* or *Giglio*. Based on the pleadings and

late disclosure under Fed. R. Crim. P. 16(a)(1)(B)(i) and/or the district court's discovery deadline did not justify a dismissal of the indictment. This pre-trial sanction was not warranted where the reason for the late disclosure was not intentional or in bad faith, but due to a mistake, and where the district court's focus appeared to be on punishing the prosecutor rather than following the applicable law.   To the extent Swenson needed additional time to review the documents, Judge Hughes should have granted a short continuance, which would not have prejudiced Swenson, who was out on bond, or should have imposed some other remedy.

## II.  THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN DISMISSING THE INDICTMENT WITH PREJUDICE WHERE SWENSON FAILED TO PROVE A *BRADY* OR *GIGLIO* VIOLATION.

Swenson makes sweeping generalizations about the events that occurred before trial and frequently mischaracterizes them.   Swenson also seeks to usurp the jury's role by purporting to weigh potential evidence and making various conclusions that benefit her.

---

hearings, however, the Government assumes the district court found a *Brady/Giglio* violation.

For example, Swenson accuses the prosecutor of lying or otherwise engaging in intentional misconduct because she stated more than once that she had complied with the Government's discovery obligations.   In fact, the prosecutor subsequently discovered additional documents and produced them, which is not markedly different from Swenson's production of 8,768 pages of materials approximately three weeks before trial.[5]   (*See* Swenson's Brief, p. 5).

There is no evidence in the record of prosecutorial bad faith – just Swenson's allegations and Judges Hughes' unsupported conclusions. Up until February 3, 2017, when Swenson filed her motion to dismiss, the parties were intent on going to trial.   (*See* ROA.375, *see generally* ROA.377, 385, 388).   In fact, Swenson was so ready she withdrew her pending motion for continuance.   (*See* ROA.375).

The narrow focus of Swenson's subsequent motion to dismiss was the Government's failure to produce her own police report as well as six other individuals' police reports.   (*See* ROA.200).   The Government

---

[5] The Government agrees that it produced some of its documents after the district court's January 17, 2017 discovery deadline.   During the January 23, 2017 hearing, however, when the Government stated that it would contact its witnesses again to ensure everything had been produced, the district court responded, "All right."   (*See* ROA.356-57).

agrees it produced these documents after the court's January 17, 2017 discovery deadline, but the prosecutor immediately took responsibility for her oversight in not producing the reports earlier. (ROA.407, 411, *see* ROA. 235-26, 238, 495). She did not remember receiving them. (*See* ROA.407). These facts do not establish a *Brady* or *Giglio* violation or otherwise justify dismissing the indictment with prejudice before trial, however.

To prevail on her *Brady* claim, Swenson had to show: (1) that the evidence was favorable; (2) that the Government suppressed the evidence; and (3) that she was prejudiced. *United States v. Valas*, 822 F.3d 228, 236-37 (5th Cir. 2016); *see United States v. Dvorin*, 817 F.3d 438, 450 (5th Cir.), *cert. denied,* 137 S. Ct. 140 (2016) (citation omitted) (*Brady* prohibits suppression of favorable and material evidence while *Giglio* applies *Brady* to evidence affecting the credibility of key government witnesses).

Although the Government should have produced Swenson's report and the others' reports earlier, *Brady* did not require the Government to direct Swenson toward potentially exculpatory evidence that she knew about or that she could have discovered through the exercise of

7

reasonable diligence.   *See United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004).

Swenson also failed to show the evidence was favorable or material. *See United States v. Stanford*, 823 F.3d 814, 841 (5th Cir.), *cert. denied,* 137 S. Ct. 453 (2016) ("'Favorable evidence' is evidence that 'is exculpatory or impeaching,' but evidence is material only 'if there is a reasonable probability that the result of the proceeding would have differed had the prosecution disclosed the evidence.'").   The police reports claiming that Swenson was committing unrelated frauds, while she engaged in her double matching scheme here, fall short of being favorable.   (*See* ROA.497-98).

Moreover, any determination that the evidence was material was premature, despite Swenson's efforts to convince this Court that certain documents supposedly contradict or undermine other ones.   "[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." "A 'reasonable probability' of a different result" is one in which the suppressed evidence "'undermines confidence in *the outcome of the trial*.'"   *Turner v. United States*, 137 S.

Ct. 1885, 1893 (2017) (quotations marks and brackets original, citations omitted, emphasis added).

Here, of course, an inherent problem in proving materiality is that the district court short-circuited the process by going straight to a dismissal of the indictment with prejudice.    The court denied the Government the opportunity to present its proof against Swenson in spite of "the *Brady* rule's 'overriding concern . . . with the justice of the finding of guilt.'"   *Id.*

Moreover, it is purely speculative that, had the police reports, or any other documents for that matter, been disclosed earlier, the "result of the proceeding would have been different."   *See id.*   "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."   *United States v. Agurs,* 427 U.S. 97, 109-10 (1976); *United States v. Jackson*, 254 F. App'x 434, 449 (5th Cir. 2007) (unpublished)[6] (same); *United States v. Walters*, 351 F.3d 159, 170 (5th Cir. 2003) (same); *see also Smith v. Cain*, 565 U.S.

---

[6] Although unpublished opinions issued after January 1, 1996, typically are not precedent, they may be persuasive authority.   *See United States v. Rodriguez*, 630 F.3d 377, 382 n.19 (5th Cir. 2011); 5th Cir. Loc. R. 47.5.4.

73, 84 (2012) (emphasis original) ("'The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.' Rather, a 'petitioner's burden is to establish a reasonable *probability* of a different result.'"); *Cone v. Bell*, 556 U.S. 449, 491 (2009) (emphasis original, citation omitted) ("'The mere possibility that an item of undisclosed information *might* have helped the defense, or *might* have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense[.]' Rather, this Court has made clear that the legal standard for adjudicating such a claim is whether there is a 'reasonable probability' that the jury would have been persuaded by the allegedly withheld evidence.").

To conclude otherwise also would disregard the fundamental rule that a *Brady* violation does not occur where evidence is disclosed in time for its effective use at trial, even if the Government had the information for some time before disclosing it.   *Walters*, 351 F.3d at 169; *see United States v. Manners*, 384 F. App'x 302, 309 (5th Cir. 2010) (unpublished) (complaint that Government had information for some time before disclosing it does not, in itself, show a *Brady* violation); *see also Powell v.*

*Quarterman,* 536 F.3d 325, 335 (5th Cir. 2008) ("Supreme Court has never expressly held that evidence that is turned over to the defense during trial has been 'suppressed' within the meaning of *Brady.*").

In the instant case, Swenson received the reports in time to use them effectively at trial, unlike "[t]he typical 'late production' case [that] involves production during the trial." *United States v. Morrison,* 833 F.3d 491, 508 n.12 (5th Cir. 2016), *cert. denied,* 137 S. Ct. 1098 (2017). Once information is disclosed – even late in the course of a prosecution – it "can no longer be deemed to be 'suppressed.'" *Id.* at 508; *see United States v. Rojas*, 812 F.3d 382, 408 (5th Cir.), *cert. denied*, 136 S. Ct. 2420 (2016) (no suppression where Government disclosed information before trial).

The analysis then "turns on whether the defendant was prejudiced by the tardy disclosure." *Morrison*, 833 F.3d at 508.   As this Court repeatedly has stated, however, "[i]f the defendant received the material in time to put it to effective use at trial, his conviction should not be reversed simply because it was not disclosed as early as it might have and, indeed, should have been." *United States v. McKinney*, 758 F.2d 1036, 1050 (5th Cir. 1985); *see Valas*, 822 F.3d at 237 (same); *United*

*States v. Mitchell*, 538 F. App'x 369, 370 (5th Cir. 2013) (unpublished) (same).   Indeed, this Court has "refused to find *Brady* violations in other situations where counsel is able to put exculpatory evidence to effective use, even if earlier disclosure may have provided additional benefit." *Manners*, 384 F. App'x at 309.

Such was the case here.   The facts also are far more favorable than those cases where documents were produced during, and even after, trial; yet, courts refused to find a *Brady* violation.

Also, as the Government discussed more fully in its opening brief, Swenson failed to offer any objective indication that her investigation and/or trial strategy allegedly was "turned on its head" and that she could not effectively use the information in the reports at trial.   (*See* ROA.266) *See United States v. Madrid*, 676 F. App'x 309, 312 (5th Cir. 2017) (unpublished) (rejecting prejudice claim where defendant was able to use late disclosure in his cross-examination and during closing argument). This conclusion is particularly warranted because much of the information related to Swenson's involvement in other frauds.   Swenson also knew about the "facts" related to the report she filed in Montgomery County.

## III.   THE DISTRICT COURT ABUSED ITS POWER BY DISMISSING THE INDICTMENT WITH PREJUDICE.

Even if this Court determines a *Brady/Giglio* violation occurred, the district court abused its discretion.   Although a court has broad discretion, it "must carefully weigh several factors" before imposing sanctions: (1) the reasons why the disclosure was not made; (2) the amount of prejudice to the defendant; (3) the feasibility of curing such prejudice with a continuance of the trial; and (4) any other relevant circumstances.   *See United States v. Garrett,* 238 F.3d 293, 297 (5th Cir. 2000).

Judge Hughes did not seriously consider these factors before imposing sanctions here.   Moreover, under no circumstances did the district court try to impose the least severe sanction.   Instead, the court summarily decided against a continuance and did not appear to consider any other type of corrective action.   In doing so, it also seemed to blame the Government for Swenson's prior requests for continuances.   (*See* ROA.232).

Under no circumstances do the facts here rise to the level of an extraordinary situation justifying the dismissal of the indictment with prejudice.   *See United States v. Strouse*, 286 F.3d 767, 772 n.12 (5th Cir.

13

2002) (power to impose extreme sanction of dismissal with prejudice reserved for extraordinary situations and only where the Government's misconduct has prejudiced defendant); *United States v. McFadden*, 59 F.3d 1243, at \*2 n.1 (5th Cir. 1995) ("use of a court's supervisory powers to dismiss an indictment should be confined to extraordinary situations"); *United States v. Fulmer*, 722 F.2d 1192, 1195 (5th Cir. 1983) (district court's supervisory powers allow it to impose extreme sanction of dismissal of an indictment with prejudice only in extraordinary situations – "only where it has been shown that governmental misconduct or gross negligence in prosecuting the case has actually prejudiced the defendant").

As stated earlier, the prosecutor immediately and repeatedly took responsibility for the late disclosure of the Montgomery County police reports and represented she made a mistake.   (ROA.407, 411).   "[M]ere error or oversight is neither gross negligence nor intentional misconduct."  *Fulmer*, 722 F.2d at 1195; *see United States v. Buck*, 847 F.3d 267, 273 (5th Cir.), *cert. denied*, 138 S. Ct. 149 (2017) (unintentional failure to disclose weighs against dismissal with prejudice as a sanction).

Swenson's reliance on *United States v. Chapman*, 524 F.3d 1073 (9th Cir. 2008), to support Judge Hughes' dismissal of the indictment with prejudice is misplaced. Unlike here, *Chapman* involved documents, including rap sheets and plea and cooperation agreements, that were disclosed during trial and "related to numerous government witnesses, including at least three important witnesses whose testimony was already complete." *Id.* at 1079. Indeed, the disclosure occurred during the third week of trial and while the Government's twenty-fifth witness was testifying. *See id.* at 1078-79. Also, unlike here, the *Chapman* prosecutor did not immediately take responsibility for the late disclosure. *Id.* at 1079-80. Unlike here, there was evidence that the *Chapman* prosecutor "had acted 'flagrantly, willfully, and in bad faith." *See id.* at 1079-80, 1084-85. Also, unlike here, evidence had been developed during the *Chapman* trial that enabled the district court to conclude that, "to date," "the government's case had been quite weak and that the defendants would suffer substantial prejudice if the case were retried because the government and its witness[es] will not make [the same] mistake[s] again." *See id.* at 1080 (brackets original); *see also id.* at 1084, 1087.

15

The Ninth Circuit recognized "that accidental or merely negligent governmental conduct is insufficient to establish flagrant misbehavior." *Id.* at 1085. Unlike here, however, the *Chapman* prosecutor's "affirmative misrepresentations" and other circumstances "support[ed] the district court's finding of 'flagrant' prosecutorial misconduct, even if the documents were not intentionally withheld from the defense." *See id.*

In the instant case, Swenson was not prejudiced by the Government's disclosure four days before trial of her own report and the other police reports. Before then, the parties were focused on going to trial. Under the circumstances, the district court easily could have, and should have, granted a continuance or taken some other corrective action, rather than punish the Government and allow Swenson to escape justice. *See United States v. Poole*, 735 F.3d 269, 278 (5th Cir. 2013) (reversing an order of a new trial after a verdict that was inappropriately used as a mechanism to punish the prosecutor's violation of a court order); *Dvorin*, 817 F.3d at 453 ("Generally, a district court will not impose severe sanctions, like suppression of evidence, where the government's discovery violations were not committed in bad faith.").

Under this Court's precedents, the imposition of the extreme sanction of dismissing the indictment with prejudice was improper.   As the record shows, the district court seemed intent on punishing the Government for its view of the AUSA's investigation and the late disclosure, rather than advancing justice or considering a less extreme sanction.   This Court should remedy this great injustice.

## CONCLUSION

This Court should reverse the district court and/or vacate and remand for further proceedings.   The Government requests any other relief to which it may be entitled.

Respectfully submitted,

ABE MARTINEZ
Acting United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

s/ *Eileen K. Wilson*
EILEEN K. WILSON
Assistant United States Attorney
United States Attorney's Office
1000 Louisiana, Suite 2300
Houston, Texas 77002
Phone: (713) 567-9102
Fax: (713) 718-3302

ATTORNEYS FOR APPELLANT

## CERTIFICATE OF SERVICE

I certify that, on December 20, 2017, an electronic copy of the Government's brief was served, by notice of electronic filing, via this Court's ecf system, upon opposing counsel, Mr. Michael Sokolow.

Upon notification that the electronically-filed brief has been accepted as sufficient and upon the clerk's request, seven paper copies of this brief will be placed in the United States Mail, postage prepaid, addressed to the Clerk.   *See* 5th Cir. R. 25.2.1; 5th Cir. R. 31.1; 5th Cir. ecf filing standard E(1).

s/ *Eileen K. Wilson*
EILEEN K. WILSON
Assistant United States Attorney

## **CERTIFICATE OF COMPLIANCE**

1.  This brief complies with the type-volume limitation of Fed. R.
    App. P. 32(a)(7)(B) because it contains **3,158** words, excluding
    the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R.
    App. P. 32(a)(5) and the type style requirements of Fed. R.
    App. P. 32(a)(6) because it has been prepared in a
    proportionally spaced typeface using Microsoft Word 2016 in
    Century Schoolbook, 14 point font for text and 12 point font
    for footnotes.

3.  This brief complies with the privacy redaction requirement of
    5th Cir. R. 25.2.13 because it has been redacted of any
    personal data identifiers.

4.  This brief complies with the electronic submission of 5th Cir.
    R. 25.2.1, because it is an exact copy of the paper document.

5.  This brief is free of viruses because it has been scanned for
    viruses with the most recent version of McAfee Endpoint
    scanning program.

                                        s/ *Eileen K. Wilson*
                                        EILEEN K. WILSON
                                        Assistant United States Attorney
                                        Dated: December 20, 2017