# Exhibit E

Case 4:15-cr-00402 Document 536 Filed in TXSD on 02/07/17 Page 2 of 15 · Case 4:17-cr-00222 Document 86 Filed in TXSD on 02/10/19 Page 2 of 145

1

```
                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE SOUTHERN DISTRICT OF TEXAS
                              HOUSTON DIVISION


UNITED STATES OF AMERICA        )
                                )         NO. H-15-CR-402
v.                              )
                                )         February 6, 2017
SIMONE SWENSON                  )




                     HEARING ON MOTION TO DISMISS
                  BEFORE THE HONORABLE LYNN N. HUGHES




For the Government:          Tina Ansari, AUSA
                             Suzanne Elmilady, AUSA
                             U. S. Attorney's Office
                             1000 Louisiana, Suite 2300
                             Houston, TX 77002

For the Defendant:           Charlotte Herring, AFPD
                             Peter Bray, AFPD
                             Federal Public Defender
                             P.O. Box 61508
                             Houston, TX  77208

Court Reporter:              Bruce Slavin, RPR, CMR
```

Proceedings reported by mechanical stenography and produced by computer-aided transcription.

|        |    |                                                                      |
|--------|----|----------------------------------------------------------------------|
|        | 1  | THE COURT: Good morning.                                             |
|        | 2  | MS. ANSARI: Good morning.                                            |
|        | 3  | THE COURT: Does the government have a response to                    |
|        | 4  | the motion to dismiss?                                               |
| 11:11  | 5  | MS. ANSARI: Yes, Your Honor. In regards to the                       |
|        | 6  | exculpatory statements --                                            |
|        | 7  | THE COURT: Use the microphone, please.                               |
|        | 8  | MS. ANSARI: Yes, Your Honor. In regards to the                       |
|        | 9  | main substance of the Defendant's argument about exculpatory         |
| 11:11  | 10 | statements from the Defendant --                                     |
|        | 11 | THE COURT: Well, I don't know about their                            |
|        | 12 | arguments. I know that there was a report which has                  |
|        | 13 | defensive uses that was not produced.                                |
|        | 14 | MS. ANSARI: Yes, Your Honor. I became aware of                       |
| 11:11  | 15 | the Montgomery police report on Friday.                              |
|        | 16 | THE COURT: Well, how did you becomes aware of it                     |
|        | 17 | on -- Pull that microphone down. Not the top of it. Ma'am,           |
|        | 18 | you have got to get the base down the slope. Now lift it             |
|        | 19 | up.                                                                  |
| 11:11  | 20 | MS. ANSARI: Yes, Your Honor.                                         |
|        | 21 | THE COURT: There you go. Just like Taylor Swift.                     |
|        | 22 | MS. ANSARI: Yes, Your Honor.                                         |
|        | 23 | THE COURT: How is it that a police report from                       |
|        | 24 | Metropolitan Houston about the Defendant was not part of the         |
| 11:12  | 25 | government's investigation?                                          |

11:12  1    MS. ANSARI: It was, Your Honor. Ms. Brooks had it
       2  in her possession. When I spokes to her about it on Friday
       3  after I got them and after I spoke to the Defendant, she
       4  said she had e-mailed it to me like two or three years ago.
11:12  5  I'm sure she did. It is my mistake, Your Honor. I don't
       6  ever remember opening the e-mail or downloading the
       7  documents. I never had them in my file. The first time I
       8  personally saw them --
       9    THE COURT: You did have it in your file. Once it
11:12 10  comes under your control it's --
      11    MS. ANSARI: Yes, Your Honor. Again, it is my
      12  mistake. I am at fault for not knowing they existed even
      13  though they were in my e-mail.
      14    I forwarded them to them -- to Ms. Herring.
11:12 15    Now, in those statements are complaints by
      16  family members that gave statements similar to Ms. Brooks,
      17  which I gave the statements. They're repetitious. And it
      18  did have a written statement by the Defendant about being
      19  scammed by a birth mother that has nothing to do with what
11:13 20  she's charged with in that Tammy Parker indictment. So, her
      21  being scammed has nothing to do with what is alleged in the
      22  indictment as far as why she's guilt of fraud.
      23    THE COURT: That's not what Ms. Herring says.
      24    MS. ANSARI: Right. And that is exactly the point
11:13 25  I am here today, is it is not exculpatory. Just because you

|       |    |                                                                |
|-------|----|----------------------------------------------------------------|
|       | 1  | rob a bank and then get robbed after you rob the bank          |
|       | 2  | doesn't make you not guilty of robbing the bank, Your Honor.   |
|       | 3  | THE COURT: That's not the argument.                            |
|       | 4  | MS. ANSARI: Well, that's an analogy to the point.              |
| 11:13 | 5  | THE COURT: No. If her defensive argument is that               |
|       | 6  | she didn't know what they were doing and the statement that    |
|       | 7  | is before the indictment or anything where she tells law       |
|       | 8  | enforcement officers that this woman was misleading            |
|       | 9  | everybody --                                                   |
| 11:14 | 10 | MS. ANSARI: Your Honor, the Defendant is charged               |
|       | 11 | with sending e-mails and getting money for --                  |
|       | 12 | THE COURT: I know what she's charged with. You                 |
|       | 13 | don't get to decide whether it's exculpatory.                  |
|       | 14 | MS. ANSARI: Yes, Your Honor.                                   |
| 11:14 | 15 | THE COURT: I get to decide whether it's admissible             |
|       | 16 | as potentially exculpatory.                                    |
|       | 17 | MS. ANSARI: Yes, Your Honor.                                   |
|       | 18 | THE COURT: Defendants get to testify if they want              |
|       | 19 | to, but they don't get to be believed. That's a different      |
| 11:14 | 20 | question entirely.                                             |
|       | 21 | MS. ANSARI: Yes, Your Honor.                                   |
|       | 22 | And another thing I'd like to point out is            |
|       | 23 | that I have had numerous discussions with defense counsel      |
|       | 24 | about Tammy Parker being a scammer from Day 1 when I           |
| 11:14 | 25 | explained the indictment. This is not a surprise. The fact     |

|       |    |                                                                          |
|-------|----|--------------------------------------------------------------------------|
|       | 1  | that Tammy Parker is a scammer has been known by everyone                |
|       | 2  | involved in this case.                                                   |
|       | 3  |         THE COURT:  It's a contemporaneous statement by the              |
|       | 4  | party to the case whom you have chosen to indict and not                 |
| 11:15 | 5  | produce the stuff.                                                       |
|       | 6  |                    (Counsel confer)                                      |
|       | 7  |                    Ms. Ansari --                                         |
|       | 8  |         MS. ANSARI:  Yes, Your Honor.                                    |
|       | 9  |         THE COURT:  -- if you continue to look away and                  |
| 11:15 | 10 | tend to other things while I am speaking to you, you will                |
|       | 11 | get to go outside and rest.                                              |
|       | 12 |         MS. ANSARI:  I apologize, Your Honor.                            |
|       | 13 |         THE COURT:  Well, I'd think that was more sincere                |
|       | 14 | if this weren't the third time I've told you that.  Not this             |
| 11:15 | 15 | morning.                                                                 |
|       | 16 |              So, does somebody have a copy of this police                |
|       | 17 | report?  It's in here?                                                   |
|       | 18 |              Who are those gentlemen?                                    |
|       | 19 |         MS. ANSARI:  Those are agents with the FBI, Your                 |
| 11:16 | 20 | Honor.                                                                   |
|       | 21 |         THE COURT:  And you're welcome if you're just                    |
|       | 22 | goofing off.  I just saw it said "agents" and figured I                  |
|       | 23 | might figure out who signed out.                                         |
|       | 24 |              There is another defensive use of this that                 |
| 11:17 | 25 | I'm not going to suggest in case nobody else thought of it.              |

|       |    |                                                                        |
|-------|----|------------------------------------------------------------------------|
|       | 1  | "The couple states they are not stable."                               |
|       | 2  | "Neither parent is working."                                           |
|       | 3  | Is there an independent -- I only see the                              |
|       | 4  | officer's summary of the statement.                                    |
| 11:20 | 5  | MS. HERRING: There is a voluntary statement in                         |
|       | 6  | handwriting signed by --                                               |
|       | 7  | THE COURT: Have you read this?                                         |
|       | 8  | MS. HERRING: Yes, Your Honor.                                          |
|       | 9  | THE COURT: Do you have anything to add,                                |
| 11:21 | 10 | Ms. Herring?                                                           |
|       | 11 | MS. HERRING: I'm sorry. What was the question?                         |
|       | 12 | THE COURT: Do you have anything you would like to                      |
|       | 13 | add?                                                                   |
|       | 14 | MS. HERRING: I mentioned it in the motion, but                         |
| 11:21 | 15 | when I learned of the existence of this report and this                |
|       | 16 | statement and I made a specific request for it, it then came           |
|       | 17 | out that the agent had five other police report statements             |
|       | 18 | that were made, two of which are -- were made by witnesses             |
|       | 19 | that the government has on their witness list for this trial           |
| 11:21 | 20 | that I received on Friday.                                             |
|       | 21 | THE COURT: But the government took those                               |
|       | 22 | statements.                                                            |
|       | 23 | MS. HERRING: It was the same situation. The                            |
|       | 24 | Montgomery County detective made reports and then forwarded            |
| 11:22 | 25 | them to the FBI agent back in 2013.                                    |

|  |  |
|---|---|
| 1 | I believe there's also a sixth. It was |
| 2 | mentioned in the e-mail, but it was apparently was too large |
| 3 | to produce to me on Friday that was going to be brought to |
| 4 | court today. I'm not clear on what that is or what witness, |
| 11:22  5 | if any, it pertains to. |
| 6 | THE COURT: Is there an additional report? |
| 7 | MS. HERRING: There is a report of a family member |
| 8 | that is not being used in this trial, but the file was -- I |
| 9 | did not get it to her on Friday. |
| 11:22  10 | THE COURT: What about a year ago? |
| 11 | MS. ANSARI: Again, Your Honor, I will take blame |
| 12 | for just realizing that I did not know these Montgomery |
| 13 | police reports were in our possession. It is my |
| 14 | understanding -- |
| 11:22  15 | THE COURT: Wait. If you knew there were |
| 16 | Montgomery police reports you'd go get them, whether you |
| 17 | have them or whether Ms. Brooks sent them to you. Your job |
| 18 | is to make sure you have everything. |
| 19 | MS. ANSARI: Yes, Your Honor. |
| 11:23  20 | THE COURT: This case is now a year and a half old? |
| 21 | MS. HERRING: Since the indictment, yes, Your |
| 22 | Honor. The investigation started at the end of 2013, I |
| 23 | believe. |
| 24 | THE COURT: So, three years that the government has |
| 11:23  25 | worked on this. |

```
                    1              MS. HERRING:  Yes, Your Honor.
                    2              THE COURT:  Is that right?
                    3              MS. ANSARI:  That is correct, Your Honor.
                    4              THE COURT:  Do you have anything against Montgomery
           11:23    5   County?
                    6              MS. ANSARI:  No, Your Honor, I don't have anything
                    7   against them, and I -- Honestly, if I had knowledge of those
                    8   reports -- I have been an open book.  I never try to keep
                    9   anything back and if it's -- You know, I get evidence as I
           11:24   10   get it and sometimes I don't get everything --
                   11              THE COURT:  No.  You're supposed to know what
                   12   you're doing.  You're supposed to be the one thinking of
                   13   stuff and telling Brooks to go get this, go do that, go talk
                   14   to somebody else.  Now, she has plenty of people telling her
           11:24   15   what to do inside the agency, but your job is to think about
                   16   and figure out other sources of information.  And in this
                   17   case Swenson has been in the area for some time.  I check
                   18   more than you did on my law clerk applicants.  They're an
                   19   unreliable bunch.
           11:25   20              Do you have one of the other reports, please,
                   21   ma'am?
                   22              It was lot simpler when you guys wore dark
                   23   suits, white shirts and navy ties.
                   24              MS. BROOKS:  I apologize.
           11:25   25              THE COURT:  No, not you.  I'm talking about them.
```

|       |    |                                                                          |
|-------|----|--------------------------------------------------------------------------|
|       | 1  | We didn't let girls do it in the old days.                               |
|       | 2  |     MS. HERRING:  Your Honor, may I alert you to     |
|       | 3  | something while you look at those reports?                               |
|       | 4  |     THE COURT:  Yes, ma'am.                          |
| 11:26 | 5  |     MS. HERRING:  So, those are two that pertain to  |
|       | 6  | government's witnesses that will be called and they attach               |
|       | 7  | statements to the police reports.  After reviewing the                   |
|       | 8  | contents of those statement offered by those witnesses, it               |
|       | 9  | clear to me, without going into detail, that they say things             |
| 11:27 | 10 | different from what was said in the 302s and I believe it                |
|       | 11 | constitutes *Giglio* material that I would also -- Again, I              |
|       | 12 | didn't know of the existence of these until Friday, but                  |
|       | 13 | they're -- I believe we were entitled to them as well.                   |
|       | 14 |     THE COURT:  That's pretty clear.  Whether they're|
| 11:27 | 15 | exculpatory or not, a witness statement, absolutely.                     |
|       | 16 |     MS. ANSARI:  Yes, Your Honor.                    |
|       | 17 |     THE COURT:  And who is the person with the very  |
|       | 18 | large file?                                                              |
|       | 19 |     MS. BROOKS:  It was too -- a large number of     |
| 11:28 | 20 | e-mails.  It was too large to be e-mailed.  But it is a                  |
|       | 21 | person by the name of Ann O'Connell, who was also a client               |
|       | 22 | of Sans Pareil.  She is not one of the recently listed in                |
|       | 23 | this indictment, but she is somebody who has had several                 |
|       | 24 | adoptions with the agency.                                               |
| 11:28 | 25 |     THE COURT:  But other clients who were           |

Case 4:17-cr-00242 Document 536 Filed in TXSD on 02/07/19 Page 11 of 145
10

```
 1   contemporaneous might have useful information.
 2             Have you gone through -- Ms. O'Connell was it?
 3             MS. BROOKS:  Yes, sir.  She was interviewed by the
 4   FBI also and that 302 was included in the discovery which
 5   was made available to --
 6             THE COURT:  Did you read the 302?
 7             MS. ANSARI:  Yes, Your Honor.
 8             THE COURT:  Did you even rummage around in this
 9   too-large-to-e-mail file to see what might be in there?
10             MS. ANSARI:  Well, not the police report file, Your
11   Honor, because, again, I was not aware of it, but it did my
12   own investigation and created my own theory of the case.
13             THE COURT:  And what did O'Connell tell you?
14             MS. ANSARI:  Well, I didn't deal with Ann
15   O'Connell, Your Honor.  I did not speak to her.
16             THE COURT:  Which is sort of my point.
17             MS. ANSARI:  Well, I did not speak to all the
18   witnesses in our investigation.  I just spoke to the ones
19   involving the indictment, Your Honor.
20             THE COURT:  Well, because you chose who to
21   indictment and who to name in the indictment.  That's a
22   circular way of going about this.
23             MS. ANSARI:  Right.
24             THE COURT:  'Let's pick these and only look at what
25   these claim their experience is.'
```

|       |    |                                                           |
|-------|----|-----------------------------------------------------------|
|       | 1  | What else is out there that you misplaced or              |
|       | 2  | didn't think was relevant so you didn't check it at all?  |
|       | 3  | MS. ANSARI: Nothing at this point, Your Honor.            |
|       | 4  | THE COURT: That's what you told me twice before.          |
| 11:30 | 5  | It turned out within days not to be true.                 |
|       | 6  | MS. ANSARI: Yes, Your Honor.                              |
|       | 7  | THE COURT: It's like your bank robber telling me          |
|       | 8  | at his third sentencing that he's really sorry and now he |
|       | 9  | understands it was wrong.                                 |
| 11:31 | 10 | Let's take a 15-minute recess.                            |
|       | 11 | (Brief recess)                                            |
|       | 12 | THE COURT: Thank you. Please be seated.                   |
|       | 13 | The law in this court is rather insistent on              |
|       | 14 | what might be called "full disclosure". The cases over the |
| 12:04 | 15 | last 60 years or so have addressed the inventiveness of the |
|       | 16 | government in not doing what it's supposed to do. They give |
|       | 17 | officers' reports but not witness statements, and then they |
|       | 18 | give witness statements but not other things.             |
|       | 19 | It's fairly straightforward. If the                       |
| 12:05 | 20 | government is going to prosecute somebody they have to tell |
|       | 21 | them what the case is against them in detail.             |
|       | 22 | Many of the old rules were done in an era                 |
|       | 23 | where only tax evasion cases were complicated. Most of them |
|       | 24 | involved crimes that involved something physical - bank   |
| 12:05 | 25 | robbery and smuggling. Now the proliferation of what is   |

|        |    |                                                              |
|--------|----|--------------------------------------------------------------|
|        | 1  | sometimes euphemistically called the "information economy"   |
|        | 2  | has proliferated documents beyond the authors of the rules   |
|        | 3  | in 1939 conception.                                          |
|        | 4  | "Exculpatory" includes impeachment evidence.                 |
| 12:06  | 5  | Most classes of exculpatory evidence do not allow interested |
|        | 6  | parties, like the government, to decide it's not             |
|        | 7  | exculpatory.  Frequently I am surprised by what parties in   |
|        | 8  | criminal and civil cases on both sides think is useful or    |
|        | 9  | impeachment, but that is for a factual evaluation of how     |
| 12:06  | 10 | good the evidence is, how effective, once you pass a legal   |
|        | 11 | threshold of reliability and cogency.                        |
|        | 12 | The government has had this case for three                   |
|        | 13 | years.  That should be more than enough.  I didn't go back   |
|        | 14 | and count how many get-togethers we have had or -- but I can |
| 12:07  | 15 | just note that there are 79 docket entries.                  |
|        | 16 | So, I could continue the case for the purpose                |
|        | 17 | of allowing the government to prepare its case and to share  |
|        | 18 | the information it has.  It doesn't have to share            |
|        | 19 | everything, but it should at least describe what it knows    |
| 12:08  | 20 | that it does not share.                                      |
|        | 21 | There have been, I believe, five continuances                |
|        | 22 | by the Defendant, but they were all directly related to      |
|        | 23 | preparation, trying to get supplemental records once they    |
|        | 24 | found out what the government had.  A continuance, however,  |
| 12:08  | 25 | would be too much delay.  This is not a particularly         |

```
                 complicated case, and there is no reason to extend it
                 farther.
                         The case will be dismissed.
                         Ms. Herring, anything else this morning?
12:09                    Oh.  Let me hasten.  None of this is a
                 reflection on the Federal Bureau of Investigation or the
                 Montgomery County Sheriff's Department.  The Bureau responds
                 wonderfully with guidance from counsel.  There is a reason
                 we don't let FBI agents try cases.  I know a lot of you are
12:10            lawyers, but you need a trial lawyer for that sort of thing.
                 It is simply a glitch in the Department of Justice.
                         Now, Ms. Herring.
                         MS. HERRING:  Yes, Your Honor.  Is the dismissal --
                 We'd request a dismissal with prejudice.
12:10                    THE COURT:  Yes, ma'am.  It's sort of an empty
                 gesture, isn't it?
                         MS. HERRING:  Yes, Your Honor.
                         THE COURT:  Has limitations run on anything?
                         MS. HERRING:  Your Honor, I believe it would be an
12:10            empty gesture.  It's circular.
                         THE COURT:  Has limitations run?
                         MS. HERRING:  I'm not sure, Your Honor.
                         THE COURT:  Well, still, to crank it up and take
                 another three years is unacceptable.  The answer to your
12:11            question is "Yes, ma'am."
```

```
                                                                14

 1              MS. HERRING:  Thank you, Your Honor.
 2              THE COURT:  Ms. Ansari, anything further?
 3              MS. ANSARI:  No.
 4              THE COURT:  Thank you.
12:11    5              Thank you, officers.
 6
 7                     COURT REPORTER'S CERTIFICATE
 8              I, BRUCE SLAVIN, certify that the foregoing is a
 9    correct transcript from the record of proceedings in the
10    above entitled matter, to the best of my ability.
11
12                                   s/Bruce Slavin
                                     BRUCE SLAVIN, RPR, CMR
13
14
15
16
17
18
19
20
21
22
23
24
25
```