IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| V. | § 4:17-CR-00222 |
| | § |
| BRENDA RODRIGUEZ | § |

_____

**MOTION FOR RULE 29(c)(2) JUDGMENT OF ACQUITTAL**
_____

**TO THE HONORABLE LYNN N. HUGHES, UNITED STATES DISTRICT JUDGE FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION:**

**COMES NOW**, Brenda Rodriguez, Defendant in the above-styled and numbered cause, by and through her undersigned counsel, and respectfully moves this Honorable Court pursuant to Rule 29(c)(2) of the Federal Rules of Criminal Procedure, to grant this Motion for Judgment of Acquittal. In viewing the evidence in the light most favorable to the verdict, no reasonable jury should have convicted Ms. Rodriguez of the crimes alleged because the evidence presented against Ms. Rodriguez proved insufficient to support convictions on Counts One through Four, and would show the following:

**Facts**

On Friday, January 18, 2019, the final pretrial conference was held in this matter. After a series of events concerning the Government and its attorneys, trial was to begin on Tuesday, January 22, 2019.

On January 19, 2019, the Government filed a Motion for Recusal [DKT.53], a Notice of Appeal [DKT.54], a Petition for Writ of Mandamus and Motion to Stay Proceedings [DKT.55].

On January 21, 2019, the Fifth Circuit Court of Appeals, via cmecf, sent notice that the Government's Petition for Writ of Mandamus and Motion to Stay Proceedings in cause 19-20044, document 00514802676[1], was denied.

On January 22, 2019, this Court denied the Government's Motion for Recusal [Dkt.57] and the Government filed notice of appeal to the Fifth Circuit [Dkt.54, 59].

The Government presented the Four Count Indictment against Brenda Rodriguez for alleged violations of Conspiracy to Commit Healthcare Fraud-18 U.S.C. §1349 (count 1) and three counts (2-4) of Healthcare Fraud-18 U.S.C. §§ 1347 and 2, for jury trial on January 22, 2019. [Dkt.58]. The jury returned a guilty verdict on all counts on January 24, 2019. [Dkt.74].

The Government presented the testimony of eight witnesses before resting. Nnena Iro, Cixta Cordoba, Kevin Jenkins and Magdalene Akharamen's testimony was presented in support of Count One. Dora Robles and Julie Rigglesworth's testimony was presented in support of Counts 2-4. Special Agent Paul Nixon was the Government's summary witness.

## Standard and Argument

"A motion for judgment of acquittal challenges the sufficiency of the evidence to

---

[1] The Order was 'filed' in the Fifth Circuit on January 22, 2019.

convict." *United States v. Lucio*, 428 F.3d 519, 522 (5th Cir. 2005). The jury may make factually-based inferences, *United States v. Ganji,* 880 F.3d 760, 767 (5th Cir.2018), but "a verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." *United States v. Pettigrew,* 77 F.3d 1500, 1521 (5th Cir.1996) (citing *United States v. Menesses,* 962 F.2d 420, 427 (5th Cir.1992)).

To establish conspiracy to commit health care fraud, the Government must prove beyond a reasonable doubt "that (1) two or more persons made an agreement to commit health care fraud; (2) that the defendant knew the unlawful purpose of the agreement; and (3) that the defendant joined in the agreement willfully, that is, with the intent to further the unlawful purpose." *United States v. Grant*, 683 F.3d 639, 643 (5th Cir. 2012). "The agreement may be silent and informal," *United States v. Barson*, 845 F.3d 159, 163 (5th Cir. 2016) (citing *Grant*, 683 F.3d at 643) and "may be inferred from concert of action." *United States v. Stephens*, 571 F.3d 401, 404 (5th Cir. 2009) (quoting *United States v. Bieganowski*, 313 F.3d 264, 276 (5th Cir. 2002)). "The Government may establish any element through circumstantial evidence," United States v. Ganji, 880 F.3d. 760, 767 (5th Cir.2018) (citing *United States v. Willett*, 751 F.3d 335, 339 (5th Cir. 2014)), but "[p]roof of an agreement to enter a conspiracy is not to be lightly inferred." Id. (alteration in original) (quoting *United States v. Johnson*, 439 F.2d 885, 888 (5th Cir. 1971)). Proving that "the defendant knew something criminal was afoot" is insufficient evidence of conspiracy, Id. At 776(citing *United States

*v. Alvarez*, 610 F.2d 1250, 1257 (5th Cir. 1980)) as is piling "inference upon inference." *United States v. Imo*, 739 F.3d 226, 235 (5th Cir. 2014) (quoting *Grant*, 683 F.3d at 642). Also, " '[m]ere similarity of conduct among various persons and the fact that they have associated with or are related to each other' is insufficient to prove an agreement." *Ganji*, 880 F.3d. 767-768(quoting *United States v. White*, 569 F.2d 263, 268 (5th Cir. 1978)). In this case, "there is insufficient evidence of a conspiracy if the Government has only piled inference upon inference upon which to base a conspiracy charge." *Willett*, 751 F.3d at 339.

To obtain a conviction for aiding and abetting, "the Government must prove (1) that the defendant associated with the criminal venture, (2) participated in the venture, and (3) sought by action to make the venture succeed." *United States v. Sorrells*, 145 F.3d 744, 753 (5th Cir. 1998) (quoting *United States v. Gallo*, 927 F.2d 815, 822 (5th Cir. 1991) ). "Association means that the defendant shared in the criminal intent of the principal." *Id.* (quoting *United States v. Salazar*, 66 F.3d 723, 729 (5th Cir. 1995) ). "Participation means that the defendant engaged in some affirmative conduct designed to aid the venture. Although relevant, mere presence and association are insufficient to sustain a conviction of aiding and abetting." *Id.* (quoting *Salazar*, 66 F.3d at 729).

With regard to aiding and abetting health care fraud, the Government must prove beyond a reasonable doubt that the defendant "knowingly and willfully execute[d], or attempt[ed] to execute, a scheme or artifice—(1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent

pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services." *United States v. Willett*, 751 F.3d 335, 339 (5th Cir. 2014) (alterations in original) (quoting *United States v. Imo*, 739 F.3d 226, 235-36 (5th Cir. 2014) ).

The Government's evidence showed that Brenda Rodriguez was the sole owner of QC Medical Clinic and she employed Dr. John Ramirez as her "Medical Director". Robert Fuentes, a Doctor licensed in Mexico but not licensed in the United States, had been working with Dr. Ramirez prior to being hired by Brenda Rodriguez. According to the testimony of Nnena Iro, Paul Nixon as well as Government's exhibit 28.6 and 28.7, was being held out as a "Physician's Assistant, a Nurse Practitioner, and a Doctor" prior to being hired by Brenda Rodriguez at QC Medical. The Government's evidence showed that QC Medical was not a Medical "Provider" of healthcare services and therefore, did not possess a contractual responsibility to Medicare, ethically or legally. Further, Brenda Rodriguez was not a Medicare "Provider" of healthcare services owing a responsibility to Medicare which would allow her to "bill" Medicare for payment of healthcare services provided to Medicare beneficiaries. The Government's evidence further showed that neither QC Medical nor Brenda Rodriguez ever submitted or possessed knowledge of the billing practices of any Home Health Agency alleged in the indictment. Moreover, the Government's evidence failed to

show that Brenda Rodriguez possessed any knowledge of Medicare Regulations, Medicare Policy, Medicare Procedures or Medicare's billing practices.

The Government's evidence showed a scheme orchestrated by Niron Home Health and Texas Tender Care wherein the Home Health Agencies would refer QC Medical Medicare beneficiaries to perform an initial assessment or "face-to-face" for these beneficiaries and pay $85 to $100 per beneficiary[2]. After receiving the face-to-face from QC, the HHA would send a nurse to visit the patients to determine if additional services were necessary as well as verify that the initial assessment on the face-to-face was accurate. Niron Home Health and Texas Tender Care would then develop a treatment strategy for the beneficiary known as a "plan-of-care" and create a "485" outlining the treatment plan. Niron Home Health and Texas Tender Care would send the form 485 back to QC Medical for Dr. Ramirez's approval of the plan-of-care and signature on the form "485"[3]. Finally, Niron Home Health and Texas Tender Care would submit fraudulent claims for healthcare services provided to Medicare beneficiaries.

According to Special Paul Nixon, at all times relevant to the indictment, Dr. John Ramirez was a Medicare "Provider" of healthcare services possessing

---

[2] This 'referral' process is not a violation of the regulations of Medicare or a crime against the United States of America.-depriving a healthcare benefit program kickback

[3] In order to bill Medicare for homebound care, a home healthcare agency must complete certain forms on which a doctor certifies that the patient is homebound and under the doctor's care. A skilled caregiver, frequently a nurse, must also fill out an assessment of the patient's condition after the nurse treats the patient. This assessment determines how much the home healthcare agency is paid.

Medicare billing privileges, however, no claims for healthcare services were billed under his NPI number for beneficiaries who were "under his care and being provided services by the Home Health Agencies."

Nnena Iro was the owner of Niron Home Health and had previously pled guilty to an unrelated charge of Conspiracy to Commit HealthCare Fraud.  Iro testified that she knew Robert Fuentes prior to doing business with QC Medical because Fuentes worked with Dr. John Ramirez. Iro "thought Robert [Fuentes] was allowed by Medicare to assess patients because he was working with Dr. Ramirez. She believed Robert Fuentes had a license and was either a Nurse-Practitioner or Physician's Assistant.  Comparing Nnena Iro's testimony with Laurie McMillan, a person with specialized knowledge of Medicare's regulations and billing practices testimony, revealed that certain "Non-Physician Practitioners", including Nurse-Practitioners and/or Physician's Assistants, are themselves allowed to assess patients and complete a "face-to-face". Nnena Iro and Magdalene Akharamen testified that they believed Robert Fuentes was authorized to perform the face-to-face assessment they were paying Brenda Rodriguez for because they believed Fuentes fell into the exception recognized by Medicare. The Government did not offer any evidence suggesting Brenda Rodriguez was of any different opinion as their own witnesses.  Moreover, the intentions of  Nnena Iro and Magdalene Akharamen, since no agreement was established by the Government, has no barring on the "actual" status or qualifications of Robert Fuentes, because Texas Tender and Niron Home Health were submitting fraudulent claims without anyone

else's knowledge.

Brenda Rodriguez is not disputing that Nnena Iro and Magdalene Akharamen engaged in health care fraud. Rather, she argues that she did not aid and abet them. The government did not present sufficient evidence to prove beyond a reasonable doubt that she acted with the specific intent required to support a conviction for Counts 2-4 i.e. that she knew the claims were fraudulent but Texas Tender care and Niron Home Health processed and submitted the claims with intent to further healthcare fraud. The Government must prove that Defendant "willfully participated in a scheme to defraud with the intent that the scheme's illicit objectives be achieved ..." *United States v. Tencer*, 107 F.3d 1120, 1127 (5th Cir. 1997).

## Conclusion

Although the jury may make factually-based inferences, *United States v. Ganji,* 880 F.3d 760, 767 (5th Cir.2018), "a verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." *United States v. Pettigrew,* 77 F.3d 1500, 1521 (5th Cir.1996). Concerning the ***agreement*** to commit health care fraud and whether the Government's evidence was more than mere suspicion, speculation, or conjecture, and in fact proved beyond a reasonable doubt that Brenda Rodriguez ***knew the unlawful purpose*** of the agreement and knowing that unlawful purpose, she ***willfully*** joined in the agreement with the intent to ***further*** the unlawful purpose (see *United States v. Grant*, 683 F.3d 639, 643 (5th Cir. 2012)), was non-existent.

The Government has failed to show with whom Brenda made an agreement to commit healthcare fraud with. The Government offered no evidence that Brenda Rodriguez had any knowledge of what or how Texas Tender Care and/or Niron Home Health conducted their business. Recalling the testimony of Nnena Iro that once Niron received the signed face-to-face from QC Medical, Niro "went to see all the patients . . ." "never discussed with Brenda what qualified a patient for home-health service" and "never met with Brenda and Dr. Ramirez together" alone would cause a rational trier of fact to cast doubt on their truthfulness or completeness regarding the material issues needed to sustain a conviction for violations of 18 U.S.C. §1349 , 18 U.S.C. §§ 1347 and 2. The Government did not present sufficient evidence that, through her actions, she entered into an unlawful agreement with Dr. John Ramirez, Nnena Iro, Magdalene Akharamen, Texas Tender Care and/or Niron Home Health.

The evidence proves that Medicare was defrauded by John Ramirez, Nnena Iro, Magdalene Akharamen, but not that Brenda Rodriguez agreed to join a conspiracy with intent to defraud Medicare. Not one of the Government's witnesses testified that Brenda Rodriguez knew she was in an agreement to commit Medicare fraud or knew her actions were illegal.

Worth noting, the Fifth Circuit has affirmed a conviction for conspiracy to commit health care fraud when the defendant knew billing codes were being altered, he co-signed the bank account and was held out as an owner of the fraudulent organization, he signed the Medicare provider application, he was

informed of the likely fraud, and he was aware of the high profits margins received on upcoded items. *United States v. Willett*, 751 F.3d 335, 340-43 (5th Cir. 2014). There was also sufficient evidence to convict a physician who knew her NPI number was being used to bill for services she was not licensed to provide, received compensation, and signed Medicare application documents. *United States v. Umawa Oke Imo*, 739 F.3d 226, 236-37 (5th Cir. 2014). In *United States v. Barson*, despite a lack of experience with the Medicare billing process, the Fifth Circuit affirmed a conspiracy conviction where the evidence proved that the defendant, signed blank documents, allowed the clinic to bill others under his NPI number, opened a bank account that received Medicare reimbursements, and was compensated. *United States v. Barson*, 845 F.3d 159, 164-65 (5th Cir. 2016). Barson also admitted to an FBI investigator that several suspicious circumstances had come to his attention, but he did not report his concerns to anyone. *Id.* at 163-64. The case at bar presents none of these facts *but* . . . the Government has successfully piled "inference upon inference" (see *United States v. Imo*, 739 F.3d 226, 235 (5th Cir. 2014) (quoting *Grant*, 683 F.3d at 642)) of '[m]ere similarity of conduct among [Brenda Rodriguez, John Ramirez, Nnena Iro and Magdalene Akharamen] and the fact that they have associated with or are related to each other' is insufficient to prove an agreement." Ganji, 880 F.3d. 767-768(quoting *United States v. White*, 569 F.2d 263, 268 (5th Cir. 1978)).

Finally, the there was insufficient evidence to prove Brenda Rodriguez knowingly executed a scheme with the intent to defraud Medicare and the

evidence does not prove Brenda knew the patients were **fraudulently certified** as homebound by Texas Tender Care and Niron Home Health. In *United States v. Ganji*, 880 F.3d 760, 777 (5th Cir. 2018), the Fifth Circuit overturned Dr. Ganji's fraud conviction because there was insufficient proof that "the accused doctor executed a fraudulent scheme with knowledge that the patient was not homebound." The Court opined that while evidence of Dr. Ganji's "lax practices" and "haphazard" business operation permitted an inference that the patient was not homebound, the jury could not "stretch that into a second inference that Dr. Ganji *knew* [the patient] was not homebound." *Id.* at 777-78. The Government has not and cannot articulate how this present case differs from *Ganji*.

In sum, the government wholly failed to present evidence that Brenda Rodriguez violated 18 U.S.C. §1349 , 18 U.S.C. §§ 1347 and 2. Accordingly, Brenda Rodriguez requests a judgment of acquittal on all counts pursuant to Federal Rule of Criminal Procedure 29(c)(2).

In the alternative, the Government filed notice of appeal which divested this court of jurisdiction and therefore, the judgment cannot stand.

**WHEREFORE, PREMISES CONSIDERED**, Brenda Rodriguez respectfully moves for acquittal on counts one through four of the Indictment. Or in the alternative, request the court declare the verdict in this cause null and void due to the Government's filing notice of appeal.

Respectfully submitted,

By:__/s/ Lance C. Hamm

>Lance C. Hamm
>Lawyer
>1200 Rothwell
>Houston, Texas. 77002
>Telephone:713.659.5377
> Fax:  713.588.8727
>State Bar No. 24029597
>Attorney for Brenda Rodriguez

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion for Witness List has been delivered to AUSA Tina Ansari via ECF this 7th day of February 2019.

>   /s/ Lance C. Hamm
>Lance C. Hamm

## CERTIFICATE OF CONFERENCE

On February 7, 2019, counsel for Defendant attempted to consult with AUSA's Tina Ansari, but was unsuccessful.

>   /s/ Lance C. Hamm
>Lance C. Hamm